370 So.2d 19 (1979)
BIO-MEDICAL APPLICATIONS OF CLEARWATER, INC., Petitioner,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, OFFICE OF COMMUNITY MEDICAL FACILITIES and Kidneycare of Florida, Inc., Respondents.
No. 78-278.
District Court of Appeal of Florida, Second District.
February 23, 1979.
Rehearing Denied April 27, 1979.
*20 Harold W. Mullis, Jr. and Mark D. Cohn, of Trenam, Simmons, Kempker, Scharf, Barkin, Frye & O'Neill, Tampa, for petitioner.
Eric Haugdahl, Asst. Gen. Counsel, Tallahassee, for respondent Department of Health and Rehabilitative Services.
Woodie A. Liles and Peter A. Knocke, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tallahassee, for respondent Kidneycare of Florida, Inc.
DANAHY, Judge.
On this petition for review of final administrative agency action, we are required to determine whether a material error in procedure occurred when a hearing officer refused to consolidate two opposing applications for approval of new chronic kidney dialysis facilities in the same health planning area. Instead, one application was heard and approved prior to the hearing scheduled on the second. The second applicant contends that consideration of the applications seriatim effectively denied it the opportunity to have its proposal considered. We are asked to apply the doctrine of Ashbacker Radio Corp. v. F.C.C., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945) and rule that under these circumstances a comparative hearing should have been held at which the two applications could be considered simultaneously. We grant that request and find that the failure to conduct a comparative hearing in this case constituted a material error in procedure requiring that the matter be remanded for further agency action in accordance with our Administrative Procedure Act.[1]
The proceedings here reviewed involve two state regulatory mechanisms prompted by the federal government in an effort to contain the high and rising cost of health care. Both are designed to achieve more efficient and economical uses of health services. One such mechanism is provided in Section 1122 of the Social Security Act (42 U.S.C. Sec. 1320a-1). Under Section 1122, unless the designated planning agency of a state recommends a proposed capital expenditure for a health care facility, federal health care reimbursement payments (principally Medicare and Medicaid) with respect to services furnished at that facility will be reduced by the amount of certain depreciation and other expenses attributable to the unapproved capital expenditure. The purpose of Section 1122 is to assure that federal reimbursement payments are not used to support unnecessary capital expenditures made by or on behalf of health care facilities. The state's designated planning agency is required to make findings as to whether a proposed capital expenditure *21 is consistent with the standards, criteria, or plans developed pursuant to federal legislation to meet the need for adequate health care facilities in the area covered by the plan or plans so developed.
The other regulatory mechanism is the certificate of need program required under the National Health Planning and Resources Development Act of 1974 (42 U.S.C. Sec. 300k et seq.) in order for a state to qualify for financial grants under federal health programs. The certificate of need program must provide for review and determination of need prior to the time health services or health care facilities are offered or developed and provide that only those services and facilities found to be needed shall be offered or developed in the state. The program is to be administered by a state agency designated by the state as the state health planning and development agency. The Florida certificate of need program is contained in the "Health Facilities and Health Services Planning Act," Sections 381.493-381.497, Florida Statutes (1977). Under the Act, no license may be issued to a health care facility which fails to receive a certificate of need.
The Department of Health and Rehabilitative Services (HRS) is Florida's designated planning agency under Section 1122 to make recommendations with respect to proposed capital expenditures, and is the health planning and development agency charged with the responsibility of administering the certificate of need program. The procedure for obtaining a Section 1122 determination by HRS and for issuance of a certificate of need, and the criteria to be applied in the review of such applications, are combined by HRS to form one review process. Chap. 10-5, Fla. Admin. Code.
Rule 10-5.11 lists the criteria against which certificate of need applications and capital expenditure proposals are judged. These include the need that the population served or to be served has for the proposed health facility and the financial feasibility of the project. Data required to be contained in a certificate of need application and capital expenditure proposal (Rule 10-5.09) include not only a narrative description stating specific purpose and need, but a statement of total cost; documentation showing that the project is financially feasible and can be accommodated without unreasonable charges for services rendered; and documentation showing that the project will foster cost containment through improved efficiency and productivity, including promotion of cost effective factors such as, among other things, design/construction economics.
The proceedings before us for review began with the application of respondent Kidneycare of Florida, Inc. (Kidneycare) for a certificate of need and capital expenditure approval to install a ten station kidney dialysis center in Clearwater. The application was first reviewed by the Florida Gulf Health Systems Agency, Inc. (HSA) which is the health systems agency for the health planning area consisting of Pinellas, Hillsborough, Manatee and Pasco counties. Review by the designated health planning agency is required by federal and state law and HRS rules. The HSA recommended approval, based on its determination that there would be a need for five kidney dialysis stations in its area by the end of 1978.
HRS, however, disagreed with that recommendation and disapproved the Kidneycare proposal in a letter of denial issued on December 13, 1977. The letter indicated that the HRS disapproval was based upon its determination that there was no demonstrated need for additional kidney dialysis stations in the HSA area. Kidneycare promptly requested a "fair hearing"[2] pursuant to HRS Rule 10-5.10(8). Under the Health Facilities and Health Services Planning Act,[3] under the National Health Planning and Resources Development Act of *22 1974,[4] and under Section 1122 of the Social Security Act,[5] a disappointed applicant for approval of a proposed medical facility must be afforded a hearing. Kidneycare's hearing was scheduled for January 12, 1978 before a hearing officer of the Division of Administrative Hearings of the Department of Administration.[6]
In the meantime, petitioner Bio-Medical Applications of Clearwater, Inc. (BMA) had filed an application for a certificate of need and capital expenditure approval with respect to a twenty station kidney dialysis center in Clearwater. With respect to that application, the HSA made no recommendation. Accordingly, as provided in the HRS rules and the Health Facilities and Health Services Planning Act, after the expiration of sixty days the BMA proposal was deemed recommended for approval by the HSA. HRS, however, disapproved the BMA application also and on December 29, 1977 BMA requested a "fair hearing," as Kidneycare had done sixteen days earlier. BMA's hearing was scheduled for February 17, 1978.
Simultaneously with its request for a fair hearing, BMA filed a motion to intervene in the proceedings pertaining to the Kidneycare application. A hearing was held on that motion on January 9, 1978 (three days before the scheduled Kidneycare hearing). The motion to intervene was granted. BMA then requested that the proceedings pertaining to its application and that of Kidneycare be consolidated. When Kidneycare objected, the hearing officer summarily denied that motion. BMA also filed a motion requesting a continuance of the Kidneycare hearing, stating as its reason that it wished to employ discovery rules available to an intervenor under applicable rules of procedure. That motion was also denied. It was renewed at the Kidneycare hearing on January 12, and again denied.
On February 14, 1978 the hearing officer issued his recommended order approving Kidneycare's application for ten kidney dialysis stations. The order set forth the details of the Kidneycare project and contained the statement that "based on the evidence presented, it is found that [Kidneycare's] project is financially feasible and that the facility will be adequately staffed to provide effective health care." The order further stated that "although [BMA] raised questions as to the economic feasibility of the proposed expenditure, and as to such matters as site selection, adequate staffing and efficiency of operation, [Kidneycare] presented adequate evidence to establish that it would meet such criteria in the event of approval. Therefore, in view of the fact that [HRS] denied [Kidneycare's] application solely on the basis of need, it is considered that only that aspect need be considered hereinafter."
The hearing officer, based on the evidence and data submitted to him, found a need for "at least" five additional dialysis stations in 1978 and "at least" another five by mid-1979 in the HSA area and concluded that Kidneycare's request for ten stations was warranted. He recommended issuance of a certificate of need to Kidneycare and approval of its capital expenditure proposal.
The day following the issuance of the hearing officer's recommended order, HRS issued an order adopting the hearing officer's recommendation, notwithstanding the provision in Sec. 120.57(1)(b)8, Florida Statutes (1977) that an agency shall allow each party[7] at least ten days in which to submit written exceptions to the recommended order of a hearing officer.
The BMA hearing took place as scheduled on February 17, 1978, and resulted in the recommendation of the hearing officer that BMA be permitted to open seven kidney dialysis stations in Clearwater, as opposed to the twenty stations for which BMA had applied.
*23 BMA filed its petition in this court, as provided in Section 120.68, Florida Statutes (1977), for review of the action of HRS in issuing a certificate of need to Kidneycare. Section 120.68(8) requires this court to remand for further agency action if it finds that either the fairness of the proceeding or the correctness of the action may have been impaired by material error in procedure or a failure to follow prescribed procedure. BMA asserts that material error in procedure occurred three times: first, in the denial of BMA's motion for consolidation; second, in the denial of BMA's motion for a continuance of the Kidneycare hearing; and third, in the failure of HRS to allow ten days for BMA to submit written exceptions to the hearing officer's recommended order on the Kidneycare application. Our disposition of the first point makes it unnecessary to consider the other two.
In support of its position that denial of its motion to consolidate was material error, BMA contends that the doctrine pronounced in Ashbacker Radio Corp. v. F.C.C., supra, applies. In that case the Supreme Court held that where two bona fide applications for administrative approval are mutually exclusive, the grant of one without a hearing to both deprives the loser of the hearing to which he is entitled.
Both HRS and Kidneycare argue vigorously that the Kidneycare and BMA applications were not mutually exclusive because, they say, theoretically both applications could have been granted to the full extent since a need for thirty dialysis units might have been found. Kidneycare argues further that the requirements of Ashbacker were met in this case because BMA "enjoyed full participation" in the Kidneycare hearing and thus was not denied a hearing altogether. These arguments are without merit.
In Ashbacker, the Supreme Court laid down a general principle that an administrative agency is not to grant one application for a license without some appropriate consideration of another bona fide and timely filed application to render the same service; the principle, therefore, constitutes a fundamental doctrine of fair play which administrative agencies must diligently respect and courts must be ever alert to enforce. Railway Express Agency, Inc. v. United States, 205 F. Supp. 831 (S.D.N.Y. 1962).
We agree that Ashbacker should apply whenever an applicant is able to show that the granting of authority to some other applicant will substantially prejudice his application. Great Western Packers Express, Inc. v. United States, I.C.C., 263 F. Supp. 347 (D.Col. 1966). In such a case fairness requires that the agency conduct a comparative hearing at which the competing applications are considered simultaneously. Only in that way can each party be given a fair opportunity to persuade the agency that its proposal would serve the public interest better than that of its competitor. Such an opportunity is not afforded by merely allowing an applicant to intervene in the proceedings pertaining to a competing application since the merits of the intervenor's proposal are not thereby presented for comparative consideration.
We believe that the Ashbacker doctrine clearly applies in the case before us. We are not the first to observe that where need is determined in accordance with a quantitative standard; that is, by number of units, a fixed pool of needed investments is thereby created.[8] Opposing applicants necessarily become competitors for that fixed pool. Once the determination is made that there is a need for ten kidney dialysis units or stations, the granting of an application for those ten units automatically decreases need by that number and effectively denies another pending application to the extent of those ten units. That clearly is mutual exclusivity within the meaning of Ashbacker. Cf. National Nephrology Foundation v. Dougherty, 138 N.J. Super. 470, 351 A.2d 392 (Super.Ct.App.Div. 1976) (where it has been determined that one *24 kidney dialysis facility is needed in an area, all applications for such a facility in that area compete for one certificate of need and the grant of one operates effectively as the denial of any other).
Although we can find no case applying Ashbacker to a certificate of need and capital expenditure review, more than one writer has drawn a parallel to proceedings before the Federal Communications Commission and the Civil Aeronautics Board, where comparative hearings are standard procedure whenever appropriate for the awarding of licenses in the communications field and in the awarding of airline routes.[9] The Ashbacker court held that a comparative hearing was required where there were two applications pending before the Federal Communications Commission for licenses to operate broadcasting stations and only one such license could be awarded because the operation of two stations at the same location on the same frequency would result in intolerable interference. Ashbacker has also been applied in proceedings before the Civil Aeronautics Board and in a wide variety of other state and federal administrative proceedings involving the issuance of a license, certificate, or permit for entry into a particular market.[10] Similarly, we hold that Ashbacker applies in proceedings for a certificate of need and capital expenditure determination, where approval is necessary for a new entry in the health care market of the health planning area.
Beyond Ashbacker, however, there are other considerations. We agree that a reviewing court, in considering whether a comparative hearing should have been afforded by an administrative agency, should recognize that there are always three competing interests involved: (1) the interest of the applicant in obtaining consideration of its proposal, recognized in the law requiring the agency to conduct a hearing before rejecting a proposal; (2) the interest of the agency [and the public] in establishing orderly procedures that permit agency decisions to be made in a timely and efficient manner; and (3) the interest of the public in assuring that the agency makes the best choice when several alternatives are available.[11]
Ashbacker concerns the private right of the applicant, and we have applied the Ashbacker doctrine in BMA's favor. As to the interest of HRS, we note that HRS has not defended the hearing officer's refusal to consolidate on the ground that the administrative process would thereby have been unduly disrupted. HRS says only that under the rules of procedure of the Administration Commission,[12] consolidation of separate matters is discretionary with the hearing officer and that the hearing officer did not abuse his discretion in denying BMA's request for consolidation in view of the fact that the request was "late," having been made only three days before the date set for the hearing on Kidneycare's application. That response offers no reason to justify overriding the other interests here involved. Perhaps BMA could have and should have requested consolidation at an earlier point in time,[13] but the burden of initiating comparative review does not lie solely with an interested applicant. There should be a self-starting mechanism within HRS.
*25 The Ashbacker doctrine does not mean that administrative agencies are placed in a procedural straightjacket; it is for an administrative agency to devise means of achieving comparative consideration, including an appropriate mechanism for determination by the agency whether Ashbacker requires a comparative hearing in a particular case. Railway Express Agency, Inc. v. United States, 205 F. Supp. 831 (S.D.N.Y. 1962). Neither the federal law, nor the state law (including the Administrative Procedure Act), nor the HRS rules, contain provisions establishing specific procedures for accommodating the need for comparative hearings in certificate of need proceedings. We are confident that administrative procedures will be promulgated to deal with administrative problems in affording comparative hearings, if any such problems are anticipated.
As to the third interest involved, there is no question but that the public has an interest in containing the cost of health services. State of N.C. ex rel Morrow v. Califano, 445 F. Supp. 532 (E.D.N.C. 1977). Therefore, it goes without saying that the public has an interest in the effectiveness of the certificate of need program and the Section 1122 determination. More than one observer has noted that the success of these mechanisms in limiting capital expenditures will be considerably improved by competitive review whenever such reviews are possible.[14] Additionally, comparing alternatives would permit an analysis of cost effectiveness.
HRS apparently feels that its duty is only to react to each proposal as it is submitted and as if it were isolated from any other. The public would be better served if HRS discarded such tunnel vision. Since cost containment is the purpose and objective of the certificate of need program and the Section 1122 determination, we confess that we are perplexed by the proposition that two separate kidney dialysis centers in the same area, one providing ten stations and the other providing seven, are a more efficient means of health care delivery than one center containing seventeen stations. Perhaps that proposition can be entirely justified, but we believe the public interest demands at least a conscious decision based on comparative consideration rather than a result produced by a separate and isolated assessment of each application.
The issuance of a certificate of need to Kidneycare is set aside and this matter is remanded for further proceedings consistent with this opinion.
OTT, Acting C.J., and RYDER, J., concur.
NOTES
[1] § 120.68(8), Fla. Stat. (1977).
[2] The expression "fair hearing" is used in section 1122 and is repeated in the HRS rules, but has no more legal meaning than simply the word "hearing," which, presumably, implies fairness.
[3] § 381.494(6)(e), Fla. Stat. (1977).
[4] 42 U.S.C. § 300n-1(b)(8).
[5] 42 U.S.C. § 1320a-1(b)(3).
[6] Hearings on applications for certificates of need and capital expenditure proposals are conducted by that Division. Fla. Admin. Code Rule 10-5.12.
[7] An intervenor is a party. Fla. Admin. Code Rule 28-5.02(1).
[8] Bovbjerg, Problems and Prospects for Health Planning: The Importance of Incentives, Standards, and Procedures in Certificate of Need, 1978 Utah L.Rev. 83, 114 (1978).
[9] Id at 114; Havighurst, Regulation of Health Facilities and Services by Certificate of Need, 59 Va.L.Rev. 1143, 1171 (1973).
[10] Pierce, Obtaining Agency Consideration of a Competing Proposal: Alternatives to Ashbacker, 26 Kan.L.Rev. 185, 186 (1978).
[11] Id at 199.
[12] Fla. Admin. Code Rule 28-5.07 provides that if there are separate matters before a hearing officer which involve similar issues of law, the same agency fact or identity of parties, they may be consolidated. Any party may request consolidation or the hearing officer, on his own initiative, may order consolidation.
[13] As BMA points out, only a party may request consolidation (Note 12, supra) and it did not become a party until its motion to intervene was granted, three days before the Kidneycare hearing. However, presumably, BMA could have requested earlier action on its motion to intervene or have filed that motion earlier, or it could have requested consolidation as a party to its own application at the time that it requested a hearing on its application.
[14] Bovbjerg, supra note 8; Budetti, Public Policy Issues Surrounding Certificate of Need, 1978 Utah L.Rev. 39, 41 (1978).