GLICKSTEIN, Judge,
dissenting.
The majority holds that the granting of a certificate of need to a subsequent applicant entitles a prior applicant, whose application was denied because of its failure to meet the same criteria that the later applicant was found to have met, to a comparative hearing of the two applications. In the absence of a showing of mutual exclusivity by the denied applicant, I disagree. In order to comprehend the significance of the court’s opinion and my dissent, a full recitation of the facts is necessary.
Hollywood Medical Center, Inc., owner and operator of a private Hospital in Hollywood, Florida, made application in November, 1978, for a certificate of need[1] to pur *1096 chase and install a computerized tomographic (CT) whole-body scanner at a cost of $625,000. Pursuant to Section 381.494(5) and (6), Florida Statutes (1979),[2] the application was first investigated and reviewed by the Health Planning and Development Council of Broward County, the health systems agency (HSA) for the County. On April 19, 1979, HSA recommended to the Department of Health and Rehabilitative Services (HRS) that Hollywood Medical’s application be denied. On May 22, 1979, HRS denied the application and stated in its State Agency Action Report:
The proposed project is not consistent with the adopted standard and criteria relative to the determination of the appropriate number of CT Scanners needed in the Health Systems Agency health service area. . . .[3] panded or otherwise significantly modified health-care facility, health service ....
Petitioner, South Broward Hospital District, operates Memorial Hospital, a public hospital located in Hollywood, Florida. Memorial had one CT scanner in operation when it filed an application for the purchase and installation of another one at a project cost of $848,280. On May 17, 1979, the HSA recommended to HRS that Memorial’s application be approved. On June 29, 1979, HRS approved the application on the basis that Memorial had established “extenuating circumstances,”[4] and issued a certificate of need.
Prior to June 29,1979, Hollywood Medical filed a petition with HRS for hearing pursuant to Section 120.57, Florida Statutes (1979), with respect to the denial of its application. On July 11, 1979, it served a petition for a formal proceeding pursuant to said statute, contending that Memorial’s application should not have been approved, that the granting of Memorial’s application has affected the substantial interests of *1097 Hollywood Medical, that the certificate of need should not have been issued to Memorial without a comparative hearing of the respective applications, and that its two petitions should have been consolidated. On July 25, 1979, by letter, Hollywood Medical requested a public hearing pursuant to Florida Administrative Code Rule 10-5.-10(10) for reconsideration of the issuance of a certificate of need to Memorial Hospital.[5] On July 30, 1979, HRS requested of the Division of Administrative Hearings that a hearing officer be assigned to handle Hollywood Medical’s petition for hearing filed on July 11, 1979. On August 3, 1979, South Broward Hospital District served a motion to dismiss, directed to Hollywood Medical’s petition for hearing of July 11, 1979. On August 13, 1979, the hearing officer denied the motion to dismiss, ordered South Brow-ard Hospital District joined as a respondent and consolidated Hollywood Medical’s two petitions. Memorial then filed its petition in this court for a Writ of Prohibition.
Florida Administrative Code Rule 10-5.-10(8) provides for the right of hearing to an aggrieved applicant. Rule 10-5.12(1) states, inter alia: “An applicant is not aggrieved by the issuance of a certificate of need to another applicant.” Therefore, Hollywood Medical was not aggrieved by the issuance of a certificate of need to petitioner and did not have standing to contest same.
Standing is equated with subject matter jurisdiction, Askew v. Hold the Bulkhead—Save Our Bays, Inc., 269 So.2d 696, 698 (Fla. 2d DCA 1972); Silver Star Citizens’ Committee v. City Council of Orlando, 194 So.2d 681, 682 (Fla. 4th DCA 1967), and holding a hearing upon the request of a party without standing would be an act in excess of subject matter jurisdiction. A Writ of Prohibition, being the appropriate remedy to prevent an inferior tribunal from acting in excess of its jurisdiction, English v. McCrary, 348 So.2d 293 (Fla.1977), should be issued to prohibit any hearing or other activity resulting from Hollywood Medical’s petition to HRS for hearing on the issuance of a certificate of need to Memorial.
However, I am not proposing that Florida Administrative Code Rule 10-5.12(1) should be applied indiscriminately. Under appropriate circumstances, specifically, a demonstration of mutually exclusive applications, Rule 10-5.12(1) must yield to constitutional requirements of fairness. Before expanding on these views, an appreciation of when mutual exclusivity exists is essential.
The so-called principle of mutual exclusivity is ascribed to Ashbacker Radio Corporation v. Federal Communications Commission, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945), wherein two radio stations, one in Grand Rapids, Michigan, and the other in Muskegon, Michigan, applied for authority to broadcast on 1230 kc. The Commission found that simultaneous operation by the two would result in intolerable interference. It granted the first application with a hearing, and then set the second application for hearing. The Supreme Court disagreed:
We only hold that where two bona fide applications are mutually exclusive the grant of one without a hearing to both deprives the loser of the opportunity which Congress chose to give him.
326 U.S. at 333, 66 S.Ct. at 151.
Two other Florida district courts adopted the procedure employed by the United *1098 States Supreme Court where mutual exclusivity was found in competing applications for a certificate of need filed by two different health-oriented facilities. In Bio-Medical Applications of Ocala, Inc. v. Office of Community Medical Facilities, Department of Health and Rehabilitative Services, 374 So.2d 88 (Fla. 1st DCA 1979), HRS simultaneously granted the application of Shands Teaching Hospital and denied the application of Bio-Medical, a competitor, for a certificate of need authorizing a ten-station chronic renal dialysis facility. HRS had denied Bio-Medical a Section 120.57 hearing on Shands’ application on the grounds that Bio-Medical lacked standing or did not timely assert standing. The First District Court of Appeal reversed:
We find that these applications are mutually exclusive, each proposing to satisfy the same limited need; that Bio-Medical has standing as a “party” to proceedings on Shands’ application; and that, absent Department rules giving Bio-Medical an earlier clear point of entry as intervenor, Bio-Medical timely requested a hearing after the Department acted on Shands’ application in free-form proceedings.
Bio-Medical asserts that, as an applicant for a certificate of need, it is entitled by Section 381.494(6)(e)[6] to an APA hearing on Shands’ application. That statute provides:
Any applicant or health systems agency aggrieved by the issuance or denial of a certificate of need shall have the right, within not more than 30 days from the day notice of the issuance or denial of such certificate is received from the department, to seek relief according to the provisions of the Administrative Procedure Act. .
We need not go so far as to hold that “any” simultaneous applicant for a certificate of need is entitled to an APA hearing on receipt of notice that the Department has granted another’s application. But when simultaneous applications are mutually exclusive and are so regarded by the Department, as here evidenced by the order denying Bio-Medical’s application in favor of Shands’ “less costly and more appropriate alternative,” each competitor is potentially a party to the proceedings on the other’s application. Each is one “whose substantial interests will be affected by proposed agency action” on the other’s application. Section 120.-52(10)(b), Florida Statutes (1978 Supp.); Bio-Medical Applications of Clearwater, Inc. v. Department of Health and Rehabilitative Services, 370 So.2d 19 (Fla. 2d DCA 1979).
Because Bio-Medical had standing as a potential party to the Shands proceedings, Bio-Medical was-entitled to request a hearing in those proceedings by which Shands’ substantial interests were to be determined. Section 120.57, Florida Statutes (1978 Supp.); Gadsden State Bank v. Lewis, 348 So.2d 343, 346 (Fla. 1st DCA 1977).
Id. at 88-89.
The Second District had reached a similar conclusion in Bio-Medical Applications of Clearwater, Inc. v. Dept. of Health and Rehabilitative Services, 370 So.2d 19 (Fla. 2d DCA 1979). In that case Kidneycare of Florida, Inc., applied for a certificate of need and capital expenditure approval to install a ten-station kidney dialysis center in Clearwater. HRS disapproved the application and Kidneycare requested a “fair hearing” pursuant to Florida Administrative Code Rule 10-5.10(8). In the meantime Bio-Medical Applications of Clearwater, Inc., had filed an application for certificate of need and capital expenditure approval with respect to a twenty-station kidney dialysis center in Clearwater. HRS disapproved its application also, whereupon BioMedical also requested a fair hearing. BioMedical moved that the proceedings pertaining to its application be consolidated with that of Kidneycare. Kidneycare objected and the hearing officer denied the motion. The Kidneycare hearing resulted in the issuance of a certificate of need to Kidneycare and the approval of its capital expenditure proposal for ten kidney dialysis stations. The subsequent hearing on the Bio-Medical application produced a recommendation that Bio-Medical be permitted to *1099 open seven kidney dialysis stations in Clear-water, as opposed to the twenty it had requested. Bio-Medical then petitioned the Second District Court of Appeal to set aside the issuance of a certificate of need to Kidneycare and to order a comparative hearing between Kidneycare and Bio-Medical. In granting the requested relief, the court said at page 20:
We are asked to apply the doctrine of Ashbacker Radio Corp. v. F. C. C., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945) and rule that under these circumstances a comparative hearing should have been held at which the two applications could be considered simultaneously. We grant that request and find that the failure to conduct a comparative hearing in this case constituted a material error in procedure requiring that the matter be remanded for further agency action in accordance with our Administrative Procedure Act. [footnote omitted].
On page 23 it said:
We agree that Ashbacker should apply whenever an applicant is able to show that the granting of authority to some other applicant will substantially prejudice his application. Great Western Packers Express, Inc. v. United States, I. C. C., 263 F.Supp. 347 (D.Colo.1966). In such a case fairness requires that the agency conduct a comparative hearing at which the competing applications are considered simultaneously. Only in that way can each party be given a fair opportunity to persuade the agency that its proposal would serve the public interest better than that of its competitor. Such an opportunity is not afforded by merely allowing an applicant to intervene in the proceedings pertaining to a competing application since the merits of the inter-venor’s proposal are not thereby presented for comparative consideration.
We believe that the Ashbacker doctrine clearly applies in the case before us. We are not the first to observe that where need is determined in accordance with a quantitative standard; that is, by number of units, a fixed pool of needed investments is thereby created. Opposing applicants necessarily become competitors for that fixed pool. Once the determination is made that there is a need for ten kidney dialysis units or stations, the granting of an application for those ten units automatically decreases need by that number and effectively denies another pending application to the extent of those ten units. That clearly is mutual exclusivity within the meaning of Ash-backer.
Should mutual exclusivity exist, a conflict arises between the last sentence of Florida Administrative Code Rule 10-5.12(1) and the aforementioned decisions of the First and Second Districts. As noted above Rule 10-5.12(1) lays down an inflexible all-encompassing determination that “An applicant is not aggrieved by the issuance of a certificate of need to another applicant.” However, in Bio-Medical Applications of Ocala, Inc., supra, and Bio-Medical Applications of Clearwater, Inc., supra, it was demonstrated how an applicant can be aggrieved by the issuance of a certificate of need to another applicant.[7] The limiting language of Rule 10-5.12(1) as to who is an aggrieved applicant should apply in all cases where at least a prima facie case of mutual exclusivity has not been shown by an aggrieved applicant. When a prima facie case of mutual exclusivity has been shown, a denied applicant must be given the right to a comparative hearing with the approved applicant.
*1100 In the instant case Hollywood Medical argues that petitioner’s application and its own were mutually exclusive and that the rationale of the First and Second Districts should apply sub judice. I would agree with Hollywood Medical’s conclusion if I did not take issue with its premise — the existence of mutual exclusivity. Petitioner was issued a certificate of need on the basis of extenuating circumstances,[8] one of the ten criteria for approval of a scanner.[9] No such extenuating circumstances were found on review of Hollywood Medical’s application. Thus a prima facie case of mutual exclusivity has not been shown and a comparative hearing should not be held.
With the understanding of my views expressed herein, I dissent from the court’s opinion.

. Section 381.493(3)(d), Florida Statutes (1979), defines certificate of need as follows:
“Certificate of need” means a written statement issued by the department evidencing community need for a new, converted, ex-

. Several statutory sections that are relevant sub judice were reenacted or amended in 1979 while this case was at the administrative level. Since none of the changes affects this appeal, I shall cite to the appropriate section of the 1979 publication of Florida Statutes for ease of reference only. No inference is intended that the 1979 editions does or does not apply.

. The ten criteria for approval of a Computerized Axial Tomographic (CAT) whole body scanner are contained in Florida Administrative Code Rule 10-5.11(13)(b). The first nine include the use under the direction of a qualified physician, representation on the medical staff of certain specialties, documentation of therapeutic capabilities for treating disorders, documentation of a minimum number of procedures in the past year, documentation of the need for a minimum number of scans in the future, documentation of a minimum number of scans per existing scanner in the service area, documentation of emergency service capability, agreement to provide the HSA utilization and financial data and demonstration of a willingness to share CAT services. The tenth criterion is
Extenuating circumstances pertaining to significant health care quality or access problems, improved cost benefit considerations, or research needs may be considered for purposes of modifying this requirement.

. The extenuating circumstances, according to the HRS State Agency Action Report on Memorial’s application, were:
a. Memorial Hospital is the only major hospital in South Broward Hospital District and the most active facility in Broward County to provide services to seriously sick pediatric patients.
b. For the same period of time, the hospital had 7,232 critical care patient days, the second highest utilization in Broward County.
c. The hospital had 25,484 admissions from May 1977-April 1978, 717 patient days; 53,819 EM visits; and an average daily census of 507 patients, all of which make it one of the active facilities in the county.
d. The hospital has 24,151 acute psychiatry inpatient days, making it the most active provider of this type of service.
e. For the same period of time, the hospital treated 787 cancer patients, the largest number of patients treated in the county.
f. Memorial Hospital is currently involved in a clinical study involving treatment of radiation therapy patients. Thus the hospital is devoting a significant portion of CT scanner time to fixed protocol institutionally approved research projects.
g. Memorial Hospital states that acquisition of a second scanner will improve cost benefits considerations as an extenuating circumstance will result in significant saving to the patients; can be provided in a cost effective setting, facility already has shelled in space, cut patient transportation cost to other facilities.

. Rule 10-5.10(10) provides, in part:
Within 30 days of the department’s decision on a certificate of need application, any person may, for good cause shown request in writing a public hearing for purposes of reconsideration of the department’s decision. A request for a public hearing shall be deemed by the department to have shown good cause if it:
(a)Presents significant, relevant information not previously considered by the department.
(b) Demonstrates that there have been significant changes in factors or circumstances relied upon by the department in reaching its decision.
(c) Demonstrates that the department has materially failed to follow its adopted procedures in reaching its decision. If deemed by the department that good cause has been shown, a public hearing shall commence within 30 days of receipt of the request.

. Reference is to § 381.494(6)(e), Florida Statutes (1977), which was renumbered as § 381.-494(7)(e) in the 1979 edition.

. The last sentence of Florida Administrative Code Rule 10-5.12(1), quoted in the body of this opinion, became effective June 5, 1979. Prior thereto that rule was silent as to who was an aggrieved applicant. Interestingly, the opinion in Bio-Medical Applications of Ocala, Inc. v. Office of Community Medical Facilities, 374 So.2d 88 (Fla. 1st DCA 1979), was filed on August 7 1979; however, the court failed to mention any provisions of the Administrative Code. Instead, the First District relied on the APA, in particular §§ 120.52(10)(b) and 120.57, Florida Statutes (1978 Supp.), and § 381.-494(7)(e), Florida Statutes (1979) (see n. 6, supra). The court also did not list the dates of the agency’s action; consequently it cannot be determined whether the June 5, 1979 amendments were applicable.

. See n. 4, supra.

. See n. 3, supra.