483 So.2d 700 (1985)
GULF COURT NURSING CENTER, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Office of Health Planning and Development, Provincial House of Florida, Inc., and Beverly Enterprises, Inc., Appellees.
No. AY-469.
District Court of Appeal of Florida, First District.
August 20, 1985.
On Motion for Rehearing February 14, 1986.
*702 Beth E. Antrim-Berger, of Dent, Pflugner, Rosin & Hendricks, Sarasota, for appellant.
Steven W. Huss, Asst. Gen. Counsel, Tallahassee, for appellee Dept. of Health and Rehabilitative Services.
E.G. Boone and Peggy Sullivan, Venice, for appellees Provincial House of Florida and Beverly Enterprises, Inc.
ZEHMER, Judge.
Gulf Court Nursing Center (Gulf Court) appeals a final order of the Department of Health and Rehabilitative Services (HRS or Department) denying Gulf Court's application for a certificate of need (CON) and its petition for comparative review of that application with CON applications of Provincial House of Florida, Inc. (Provincial), and Beverly Enterprises, Inc. (Beverly). We reverse.
Applications for CONs to construct and operate nursing home facilities are required by the Florida Health Facilities and Health Services Planning Act, codified in sections 381.493 through 381.495 and 381.498-.499, Florida Statutes (1983). The act emphasizes the need for controlled health planning and is intended to be consistent with similar requirements in corresponding provisions of the National Health Planning and Resources Development Act and the federal Public Health Services Act, now codified in 42 U.S.C.A. §§ 300k-300n (1982). To accomplish the stated purposes of providing reasonable health care services to the public at the lowest cost, the state and federal acts and correlative rules and regulations provide that various agencies shall investigate and determine existing and future health care needs and promulgate state and district health plans for fulfilling those needs. These plans are expected to project nursing bed needs several years in advance and must be periodically revised or upgraded. See generally 42 U.S.C.A. § 300m-2. The Department has been duly designated as the "state health planning agency" in Florida, section 381.493-(3)(t), Florida Statutes (1983), and, as such, reviews and approves or denies all CON applications.
On January 28, 1981, Provincial applied for a CON to construct a 120-bed nursing home in Lee County designed to meet a projected bed need for 1983 as identified in the 1981 health systems plan covering Lee County. Beverly filed a similar application on March 18, 1981, addressed to the same projected need. These two applications, and an application filed by Health Care Management, Inc., were comparatively reviewed in 1981, and HRS determined that Health Care was best qualified and awarded it a certificate for a 78-bed nursing home on a 120-bed frame. Provincial's and Beverly's applications were simultaneously denied by HRS, and both sought review in a section 120.57 formal hearing.[1] Before the denials were heard, however, HRS entered into a stipulation with Provincial and Beverly, dated December 29, 1981, granting both of them certificates of need for 96-bed nursing homes (amended February 21, 1982, to authorize only 72 beds per nursing home). It is undisputed that HRS granted the certificates to Provincial and Beverly because the 1982 health systems plan covering Lee County, adopted in early December 1981, projected a need for 143 additional nursing home beds beginning in 1985. HRS took the position that Provincial and Beverly had applications pending in the administrative proceeding which were the earliest filed and thus were entitled to be awarded the CONs.
*703 Meanwhile, on December 2, 1981, Gulf Court had filed its application for a CON to construct a 120-bed nursing home in Lee County based on the same 143-bed need identified and projected in the 1982 health systems plan. Gulf Court's application was comparatively reviewed with other applications filed in the batching cycle that included the month of December 1981, pursuant to rule 10-5.08(1), Florida Administrative Code. Gulf Court's application was not, however, comparatively reviewed with Provincial's and Beverly's applications. On March 30, 1982, Gulf Court's application was denied by HRS on the sole ground that the projected need for additional beds had been satisfied by the granting of certificates to Provincial and Beverly.
Gulf Court sought a section 120.57 hearing on both the denial of its CON application and the granting of certificates to Provincial and Beverly. A hearing officer from the Division of Administrative Hearings was appointed, and a final hearing was held July 25, 1983, on the following stipulated issue:
Whether or not the Respondent, HRS, pursuant to law and its rules and regulations, had the authority to enter into the stipulation granting Provincial House, Inc. and Beverly Enterprises, Inc. CONs for 72 beds each when there was a pending application by Gulf Court Nursing Center for these beds, and when these beds were not available at the time the applications of Provincial House, Inc. and Beverly Enterprises, Inc. were submitted to the Department of Health and Rehabilitative Services, but were determined as needed in the annual Health Systems Plan established for the calendar year commencing January, 1982, showing the nursing home need for 1985. If not, should 120 of the 143 bed need for 1985, as established in the 1982 Plan, be granted to Petitioner, Gulf Court Nursing Center... .
The hearing officer's recommended order found that Gulf Court was entitled to comparative review of its application with those of Provincial and Beverly.[2] HRS, Provincial, and Beverly each filed exceptions to this recommended order. The Department's final order adopted the hearing officer's findings of fact, but rejected her conclusions of law and adopted the respondents' exceptions. The final order concluded that Gulf Court was not entitled to comparative review with Provincial and Beverly, and denied Gulf Court's request for a CON. Gulf Court has appealed this final agency action.
Gulf Court challenges HRS's policy and practice of determining to grant CON applications designed to meet projected need identified in a particular health systems plan by evaluating not only the need identified in that plan but also any projected need identified in subsequent health plans. It argues that if HRS is going to consider projected need identified in health plans adopted subsequent to the filing of a completed application, then it must grant comparative review to other applicants who timely file applications related to the need discussed in the new health plan. Gulf Court argues, in effect, that the projected bed need for 1985 identified in the 1982 plan constitutes a "fixed pool" as defined in Biomedical Applications of Clearwater, Inc. v. Dept. of Health & Rehabilitative Services, 370 So.2d 19 (Fla. 2d DCA 1979) (hereinafter Biomedical), different from the fixed pool projected for 1983 in the 1981 plan, and that the challenged HRS policy amounts to the improper awarding of CONs on a first-come, first-serve basis, contrary to the comparative review requirements announced in Biomedical and the intent of section 381.494(5), Florida Statutes (1981). Gulf Court points out that rule 10-5.14, Florida Administrative Code, provides a mechanism for an applicant, after denial of an application, to later submit an updated application to address a newly projected need for the type of facilities or *704 services proposed to be met by the original application. Gulf Court contends that Provincial and Beverly should have been required to use this amendatory mechanism to be considered as applicants for the newly projected 1985 bed need identified in the 1982 plan and, therefore, should have been comparatively reviewed with all other applications timely filed with respect to such need in the December 1981 batching cycle. Thus, Gulf Court concludes, it was error for HRS to rely upon the date of the original applications in giving Beverly and Provincial priority consideration rather than requiring them to submit updated applications to address the new fixed pool created by the 1982 plan. Gulf Court requests that we vacate the appealed orders and remand for comparative review by HRS.
HRS responds by stating that a CON applicant is entitled to comparative review only with applications which are mutually exclusive, meaning applications filed simultaneously or near-simultaneously in time. According to HRS, since Gulf Court filed its application at least nine months after Provincial and Beverly, it could not be included in the same batching cycle as Provincial and Beverly for purposes of comparative review because to do so would destroy the batching concept, orderly comparative review, and the effective long-range goals of health planning. In addition, HRS contends that it is entirely proper to review Provincial's and Beverly's applications based upon changed circumstances occurring after the filing of their original applications because this court enunciated the concept of de novo agency review in McDonald v. Dept. of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977), and held that changed conditions and circumstances should always be considered in determining final agency action. HRS asserts it has consistently followed this policy in reviewing all CON applications, including those involved here.
Provincial and Beverly argue, essentially, that the court's opinion in Biomedical does not require batching or comparative review of applications separated in time by nine months and at least one batching cycle. They also point out that according to McDonald, section 120.57 hearings are de novo and therefore HRS was obligated to consider their previously denied applications in light of the expanded bed need projected in the newly issued 1982 plan.
In addressing the respective contentions of the parties, we must keep in mind the limited scope of judicial review on this appeal. Section 381.494(8)(e), Florida Statutes (1983), authorizes an applicant aggrieved by the denial of a CON to apply for judicial review as provided in the Administrative Procedure Act and requires that, "in such judicial review, the court must affirm the decision of the department unless the decision is found to be arbitrary, capricious, or not in compliance with this act." Therefore, we must consider whether the challenged HRS policy and practice and the appealed order resulting therefrom are arbitrary, capricious, or not in compliance with the Health Facilities and Health Services Planning Act, section 381.493, et seq., Florida Statutes (1983), and the related federal acts.
Our analysis necessarily begins with Biomedical, which recognized the inherent right to comparative review of mutually exclusive applications for certificates of need and mandated application of the administrative law principles of comparative review enunciated in Ashbacker Radio Corp. v. F.C.C., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945), in CON cases. Biomedical defined the Ashbacker doctrine in these words:
[A]n administrative agency is not to grant one application for a license without some appropriate consideration of another bona fide and timely filed application to render the same service; the principle, therefore, constitutes a fundamental doctrine of fair play which administrative agencies must diligently respect and courts must be ever alert to enforce.
370 So.2d at 23. Concluding that the Ashbacker doctrine is applicable "whenever an applicant is able to show that the granting of authority to some other applicant will *705 substantially prejudice his application," Id., the court explained why the doctrine is applicable in CON cases:
We are not the first to observe that where need is determined in accordance with a quantitative standard; that is, by number of units, a fixed pool of needed investments is thereby created. Opposing applicants necessarily become competitors for that fixed pool. Once the determination is made that there is a need for ten kidney dialysis units or stations, that granting of an application for those ten units automatically decreases need by that number and effectively denies another pending application to the extent of those ten units. That clearly is mutual exclusivity within the meaning of Ashbacker.

Id. (footnote omitted). After drawing analogies to proceedings before the Federal Communications Commission and the Civil Aeronautics Board, the court held that "Ashbacker applies in proceedings for a certificate of need and capital expenditure determination, where approval is necessary for a new entry in the health care market of the health planning area." Id. at 24. The court then laid down the following test for determining when a comparative hearing on CON applications is in order:
We agree that a reviewing court, in considering whether a comparative hearing should have been afforded by an administrative agency, should recognize that there are always three competing interests involved: (1) the interest of the applicant in obtaining consideration of its proposal, recognized in the law requiring the agency to conduct a hearing before rejecting a proposal; (2) the interest of the agency [and the public] in establishing orderly procedures that permit agency decisions to be made in a timely and efficient manner; and (3) the interest of the public in assuring that the agency makes the best choice when several alternatives are available.
Id. (footnote omitted).
Addressing the first two elements of this test in light of the facts in that case, the court rejected the argument by HRS that the applicant, Biomedical, had waited too late to seek comparative review because that was "no reason to justify overriding the other interests here involved"; and, noting that although the applicant could have acted earlier, the court concluded that "the burden of initiating comparative review does not lie solely with an interested applicant. There should be a self-starting mechanism within HRS." Id. The court invited HRS "to devise means of achieving comparative consideration, including an appropriate mechanism for determination by the agency whether Ashbacker requires a comparative hearing in a particular case." Id. at 25. Regarding the third element, the public interest in containing the cost of health services, the court observed that "the success of these mechanisms in limiting capital expenditures will be considerably improved by competitive review whenever such reviews are possible." Id. (footnote omitted).
Implementation of the batching cycle concept was the response to the invitation extended in Biomedical. The effectiveness of batching as implemented by HRS to assure comparative review under the Ashbacker doctrine must necessarily be tested by the principles enunciated in Biomedical and succeeding cases. We conclude from Biomedical that the policy and practice established by HRS for determining the right of comparative review must reasonably accord with the following considerations: (1) The competing applications must be bona fide and timely filed; (2) Mutual exclusivity of the competing applications must be judged by whether each seeks to meet the same "fixed pool of needed investments"; and (3) The three ever-present competing interests of the applicants, HRS, and the public must be considered in a balanced manner without giving undue importance or exclusivity to any particular interest. In addition, the agency, through its adopted policy and procedure, must provide a "clear point of entry, within a specified time after some recognizable event in investigatory or other free *706 form proceedings, to formal or informal proceedings under Section 120.57" so as to assure the right of comparative review of applications competing for the same fixed pool. Biomedical Applications of Ocala, Inc. v. Office of Community Medical Facilities, 374 So.2d 88, 89 (Fla. 1st DCA 1979).
Our review of the applicable federal and state statutes and HRS rules leads us to conclude that the challenged policy and practice of HRS does not comport with the above-cited principles and is not in compliance with the requirements of the state and federal acts. The federal act requires that, in reviewing applications for a CON, each decision of the Department "shall, except in emergency circumstances that pose a threat to public health, be consistent with the State health plan in effect for such State under section 300m-3(c) of this title." 42 U.S.C.A. § 300m-6(a)(5)(B)(ii). It is likewise required that "in approving or disapproving applications for certificates of need ... a State Agency shall take into account recommendations made by health systems agencies within the State under section 300 l-2(f) of this title." 42 U.S.C.A. § 300m-6(g). A decision to issue or not issue a CON shall be based solely on the record established in the administrative proceeding with respect to that application. 42 U.S.C.A. § 300n-1(b)(12)(B).
Similarly, the Florida act requires that an application for a CON contain "a detailed description of the proposed project and statement of its purpose and need in relationship to the applicable health systems plan, annual implementation plan, and state health plan adopted pursuant to Title XV of the Public Health Service Act." § 381.494(4)-(a), Fla. Stat. (1983) (emphasis added). The Department is expressly directed to review CON applications "in context with ... the need for the health care facilities ... being proposed in relation to the applicable district plan and state health plan adopted pursuant to Title XV of the Public Health Service Act." § 381.494(6)(c)(1), Fla. Stat. (1983) (emphasis added). The Department is designated as "the single state agency to issue, revoke, or deny certificates of need ... in accordance with the district plans and present and future federal and state statutes." § 381.494-(8)(a), Fla. Stat. (1983) (emphasis added).
The Department, pursuant to statutory authority, has adopted rules governing applications for CONs. Rule 10-5.09(1), Florida Administrative Code Annotated (1984 ed.), requires that each application show the proposed project's "consistency with the applicable Health Systems Plan, Annual Implementation Plan, and State Health Plan." Additionally, the Department has also adopted rules defining criteria for authorizing community nursing home beds which provide, among other things:
The Department will not normally approve applications for new or additional community nursing home beds in any departmental service district if approval of an application would cause the number of community nursing home beds in that departmental service district to exceed the number of community nursing home beds calculated by the methodology described in subsections 21(b), (c), (d), (e), (f), (g), and (h) of this rule.
Rule 10-5.11(21), Fla.Adm.Code Annot. (1984). Subsection 21(b) requires that projected need be determined "three years into the future." Although this rule has been rather frequently amended or modified over the last seven years, most recently as of December 25, 1984 (see History, Rule 10-5.11(21), Fla.Adm.Code Annot. (1984 Supp.)), the approval of applications for additional beds justified by the criteria set forth in this rule is necessarily subject to conformance with the statutory requirements that applications for CONs be consistent with and reviewed against projected bed need identified in state and district health plans.
We conclude that a CON application for nursing home beds is required to address a specific bed need projected in the applicable district and state health plans. If the number of beds covered by the application is not within the number identified in *707 the plan, a decision to grant the application could not be consistent with the requirement in section 300m-6(a)(5)(B)(ii), Title 42, U.S. Code, that each decision be consistent with the state health plan. Statewide Health Coordinating Council v. General Hospitals of Humana, Inc., 280 Ark. 443, 281 Ark. 98, 660 S.W.2d 906 (1983). It was mandatory, therefore, that the applications of Provincial and Beverly, as well as Gulf Court, be made in relation to a projected bed need specified in a district health plan, and each of them did so. The "fixed pool" of beds sought by the respective applications was that identified in the respective district plans to which each application was addressed. Since Provincial and Beverly addressed the projected need for 1983 described in the 1981 plan, that projected need became the fixed pool for purposes of comparative review of competing applications under the principles of Biomedical. Gulf Court's application was addressed to the 1985 projected bed need described in the 1982 plan, and that became the fixed pool for purposes of comparative review of its application with others. This holding gives full effect to the principles in Biomedical and comports with the obvious statutory scheme which emphasizes the need for adequate planning and adherence to approved plans until the latter are amended, updated, or superseded.
Comparative review considerations under Biomedical also require that competing applications be timely filed, i.e., filed reasonably close to each other in point of time in respect to the same fixed pool. The means for accomplishing this result are contained in the batching concept authorized by section 381.494(5), Florida Statutes (1983), and implemented by rule 10-5.08. Essentially, the batching concept requires submission of applications on a time table or cycle basis so that the Department can "provide for all completed applications pertaining to similar types of services, facilities, or equipment affecting the same service district to be considered in relation to each other." § 381.494(5), Fla. Stat. (1983). Significantly, only completed applications may be reviewed in relation to each other. Since each application must identify the plan and fixed pool of bed need on which it is based, once that need has been described in the application and the application has been accepted as complete, it cannot thereafter be supplemented by additional information or amendment except in the special circumstances described in rule 10-5.08(7), Florida Administrative Code Annotated (1984 ed.),[3] before initial review and denial. None of the procedures under this rule were used to amend Beverly's and Provincial's application, so those applications, having been completed, reviewed, and denied, could not thereafter be supplemented or amended to facilitate consideration by HRS in relation to another fixed pool described in a subsequent year, except as provided in rule 10-5.14.[4]
*708 Returning to the facts of this case, it is apparent that the CON applications of Provincial and Beverly, as completed in 1981, were based on the 1983 projected need or fixed pool, while Gulf Court's application was predicated on the 1985 projected need or fixed pool. The completed applications of Provincial and Beverly could not be considered as competing with Gulf Court's application until the former were updated pursuant to rule 10-5.14 so as to allege the essential element of the newly projected 1985 bed need. Only by such update could their applications be considered in relation to the new plan. Any such update and request for reconsideration should be considered as essentially a new request based on different information and a different fixed pool, and should be judged in competition with all other timely filed applications for that new fixed pool. Gulf Court's application was timely filed in relation to the 1982 plan. Since the record does not reveal any attempt by either Provincial or Beverly to update their applications under rule 10-5.14, the decision by HRS to consider, sua sponte, the applications as so updated and to award both Provincial and Beverly the requested CONs without affording comparative review with Gulf Court's timely filed application is not in compliance with the federal and state acts.
The argument by HRS that this result will destroy the batching concept and orderly comparative review is without merit. Appropriate updating under rule 10-5.14 assures that timely and bona fide applications for the same fixed pool of beds will always be considered competitively and permits appropriate consideration of the three ever-present competing interests in a fair and balanced manner. Additionally, strict adherence to HRS's procedural rules governing the supplementation or amendment of completed applications before review and after denial will afford all applicants desiring to compete for the same fixed pool of beds a clear point of entry into the system, without giving any applicant an undue advantage over a competing application.
The challenged policy and procedure defended by HRS serves to defeat comparative review rather than preserve it. By considering pending applications as being addressed to all new fixed pools developing after completion of the application, HRS places a premium on the early filing of an application without regard to its consistency with the fixed pool on which the application was originally based. HRS's consideration of applications in light of new fixed pools, without requiring appropriate amendment or supplementation pursuant to its rules, encourages the filing of applications in every batching cycle, regardless of consistency with the existing health plans, on the chance that new information or developments coming to light between the denial of an application and a section 120.57 formal hearing thereon may breathe new life into the project and afford unwarranted priority over a subsequent, timely filed application based on the new plan. It is well known that a certificate of need for future hospital beds, once granted, becomes a very valuable property interest, often worth millions of dollars. This fact alone has prompted keen competition for the acquisition of such certificates by health care providers. The value of these certificates has prompted the filing of an untoward number of applications, often irrespective of actual projected need shown by duly adopted health system plans. We are convinced that HRS's past practices, which have been appropriately criticized, are a principal cause of the inordinate number of CON applications being filed with HRS, and has undoubtedly adversely affected the limited ability of HRS to investigate and process CON applications.[5]
*709 HRS also errs in its contention that it was required by McDonald v. Dept. of Banking & Finance, 346 So.2d 569, to consider the new projected bed need for 1985 in reviewing Provincial's and Beverly's applications under the concept of de novo agency review.
In McDonald the petitioners applied to the Department of Banking and Finance for authority to organize and operate a bank. Their application was objected to on various grounds by six different banks in the immediate vicinity of the proposed bank. Petitioners' application progressed through various agency reviews, was denied, and eventually was reviewed in a section 120.57 formal proceeding. During that proceeding petitioners attempted to introduce evidence of improved banking and economic conditions that had occurred subsequent to the state comptroller's denial of its application. The Department objected to admission of this evidence on the ground that it should not be considered since it arose subsequent to the initial denial of the application. The objection was overruled by the hearing officer for the following reason:
`This [is] a fact-finding adversary hearing ... to determine the issue of whether petitioner[s] should be granted authority to organize and operate a general banking business at the proposed location; and considering the long delay between the Comptroller's conference, the Comptroller's order of denial and the date of the present hearing, as well as the fact that the Comptroller declined to reach any conclusion as to four of the six criteria required to be met for a charter, the parties were permitted to present all relevant evidence to date concerning the issue in dispute.'
346 So.2d at 576. On appeal this court affirmed the hearing officer, stating in part:
The hearing officer's decision to permit evidence of circumstances as they existed at the time of the hearing was correct. The agency may appropriately control the number and frequency of amendments to licensing applications and may by rule prevent substantial amendment of the application in mid-proceeding. But the hearing officer or agency head conducting section 120.57 proceedings should freely consider relevant evidence of changing economic conditions and other current circumstances external to the application. Section 120.57 proceedings are intended to formulate final agency action, not to review action taken earlier and preliminarily.
Id. at 384 (footnote omitted).
McDonald did not involve any issue similar to the comparative review problem now before the court. Neither that case nor any other cited Florida appellate decision subsequent to McDonald has applied the de novo concept to final administrative hearings reviewing the denial of a CON application. E.g., Couch Construction Co. v. Dept. of Transportation, 361 So.2d 172 (Fla. 1st DCA 1978) (bid proceeding to obtain highway construction contract); Szkolny v. State Awards Committee, 395 So.2d 1290 (Fla. 1st DCA 1981) (proceeding to obtain state awards grant); Florida Dept. of Transportation v. J.W.C. Co., 396 So.2d 778 (Fla. 1st DCA 1981) (application to acquire air pollution permit from the Department of Environmental Regulation); Capeletti Bros. v. Dept. of General Services, 432 So.2d 1359 (Fla. 1st DCA 1983) (bid proceeding to acquire construction contract from Department of General Services); DeCarion v. Dept. of Environmental Regulation, 445 So.2d 619 (Fla. 1st DCA 1984) (application for a dredge and fill permit from the Department of Environmental Regulation).
We find nothing in the McDonald decision that compels HRS to consider a new fixed pool of beds identified in *710 a health plan promulgated after the CON application under consideration has been completed and denied unless that application has been appropriately amended or updated. The key to McDonald's holding that evidence of changed conditions or circumstances should be considered in the 120.57 hearing is its requirement that such evidence be "relevant" to the application. Whether evidence is relevant to a given CON application depends on whether such evidence relates to the original fixed pool covered by that application or relates to another fixed pool identified in a subsequent amendment or update to the application. The court in McDonald was careful to point out that an "agency may appropriately control the number and frequency of amendments to licensing applications and may by rule prevent substantial amendment of the application in mid-proceeding." 346 So.2d at 384. Certainly, the hearing officer in a section 120.57 proceeding is not limited to consideration of the record made by HRS during its preliminary investigation of the CON application and may freely consider any and all additional evidence presented by the parties, including evidence of changed conditions since the preliminary review, so long as it is relevant to the fixed pool under consideration. For example, Provincial or Beverly would not be foreclosed from presenting evidence showing that the 1983 projected bed need in the 1981 plan was in fact inadequate under the criteria adopted by HRS for defining projected need and could present evidence in an attempt to justify a CON for additional beds in excess of that described in the plan. In so doing, the hearing officer and HRS would still be addressing the same fixed pool of beds which was the basis of the original application. Whether or not such application could be granted without public hearings and amendment to the 1981 plan is not before us, and we express no view on that question.
Summarizing, we hold that HRS erred in denying Gulf Court comparative review of its application with the applications of Provincial and Beverly, and erred in denying Gulf Court's application on the sole ground that the projected need had been satisfied by the granting of Beverly's and Provincial's applications. The appealed orders are vacated and the matter remanded for further proceedings consistent with this opinion. In view of our disposition, it is only fair that Provincial and Beverly be given a reasonable opportunity to update or resubmit their applications for comparative review with Gulf Court's application.
REVERSED and REMANDED.
MILLS and ERVIN, JJ., concur.

ON MOTION FOR REHEARING
ZEHMER, Judge.
Appellees Provincial House of Florida, Inc. (Provincial House), and Beverly Enterprises, Inc. (Beverly), have jointly filed a motion for rehearing, motion for rehearing en banc, and motion to expunge record. Appellee Department of Health and Rehabilitative Services (HRS) has filed a motion for rehearing and clarification with respect to our opinion filed August 20, 1985. Oral argument was held on these motions on December 3, 1985. After further consideration of the additional arguments presented, and in view of the following clarification of our original opinion, we deny all motions.
The motion of Provincial House and Beverly argues that, in rendering our opinion, we improperly used certificate of need (CON) applications and letters of intent that were not properly a part of the record on appeal because they were not before the hearing officer in the proceeding below. By order dated October 1, 1984, we directed Gulf Court Nursing Center (Gulf Court) to supplement the record on appeal with copies of the letters of intent and CON applications filed by the parties with HRS, together with HRS orders granting or denying such applications. In complying with this order, Gulf Court merely filed copies of the various documents, without certification by the Secretary of the Division of Administrative Hearings (DOAH) *711 that such documents were properly a part of the record below. By order dated October 30, 1984, we declined to accept these documents as part of the record because they were neither certified by the Secretary nor otherwise submitted in accordance with rule 9.200, Florida Rules of Appellate Procedure. Subsequently, Gulf Court filed a certificate from DOAH indicating that neither the CON applications nor letters of intent had been in the record before the hearing officer. For this reason, we did not consider the contents of either the applications or the letters of intent. All facts and conclusions contained in our opinion were predicated on the pretrial stipulation of the parties and recommended order in the record of appeal, the agreed statement of facts in the briefs, and the applicable statutes and rules. These sources made it clear that Gulf Court's application for CON was addressed to an identifiable fixed pool of beds in one annual plan, while the applications of Provincial House and Beverly were originally addressed to another fixed pool of beds identified in another annual plan but were granted to meet the need described in Gulf Court's application.
Provincial House and Beverly also seek rehearing en banc upon an alleged conflict between our opinion in this case and this court's opinion in Community Psychiatric Centers, Inc. v. Department of Health and Rehabilitative Services, 474 So.2d 870 (Fla. 1st DCA 1985). A correct reading of both opinions reveals no such conflict. In Community Psychiatric Centers (CPC), the controlling issue on appeal was whether CPC, an applicant for a psychiatric specialty hospital, was entitled to a formal administrative hearing to challenge a CON issued to an applicant for similar services who had applied in a prior batching cycle. This court held there was no such right to hearing because CPC did not fall within the definition of "affected person" under rule 10-5.02(20), Florida Administrative Code. The instant case is clearly distinguishable from Community Psychiatric Centers. Unlike the instant case, in that case it does not appear that there was any consideration of whether the prior applicant was competing for the same fixed pool of beds as was CPC. Additionally, whether Gulf Court was an "affected person," regardless of the fixed pools involved, was never an issue in this case, whereas it was the decisive issue in Community Psychiatric Centers.
In its motion for rehearing and clarification, HRS seeks guidance from us regarding the effect of our decision on the current statutory and regulatory scheme. Our decision is based on the federal and state statutes and rules in existence at the time the HRS order was entered. The decision concludes that such statutory language gave Gulf Court the right to a comparative hearing under the circumstances shown in this case. The opinion should be read in this light, and the legal consequences of the decision should not be extended beyond the issues actually decided.
Substantial changes have been made to the cited Florida statutes and rules since 1982. These changes have altered the methodology for determining bed need and may well affect the manner for determining what, if any, fixed pool of beds is involved in a particular application. We have not received briefs on any issues concerning the effect of these subsequent statutory changes on the rights of the parties to this case and express no opinion thereon. The applicability of the changed statutes, and how the rationale of this decision must be applied in light of these statutory changes, are open questions. The import of our decision is simple: The CONs issued to Provincial House and Beverly are invalid because they were issued to satisfy the fixed pool of bed need for which Gulf Court had timely applied and for which it was entitled to comparative review with Provincial House and Beverly. These parties must now be given a comparative hearing. Whether or to what extent changed facts, circumstances, and statutes may affect the rights of these parties to receive the applied-for CONs remains to be determined in further proceedings before the hearing officer and the agency.
MILLS and ERVIN, JJ., concur.
NOTES
[1] § 120.57(1), Fla. Stat. (1981).
[2] The hearing officer did not undertake to decide the last issue in the stipulation because it had been severed from this proceeding.
[3] Rule 10-5.08(7), Florida Administrative Code Annotated (1984 ed.), reads as follows:

(7)(a) Upon an application being declared complete by the department, no further application information or amendment will be accepted from the applicant unless:
1. In the case of written information or amendment, all parties are in receipt of such information or amendment;
2. In the case of information which is communicated orally in a meeting between the applicant and the department, all parties have been advised of, and given the opportunity to attend, the meeting at which such information is to be communicated; or
3. Such information or amendment is requested by a reviewing HSA council, committee, or board or by the department; provided, neither an HSA nor the department shall require any information from an applicant at any stage of the review process unless such information is prescribed and published as being required.
(b) No further application information or amendment will be accepted by the department within five days of the date on which a decision is due on the application.
[4] Rule 10-5.14, Florida Administrative Code Annotated (1984 ed.), reads as follows:

Application Resubmittal. In cases where a Certificate of Need is denied the applicant may resubmit an updated application for reconsideration:
(1) Whenever the department in consultation with the HSA determines that there is a substantial change in existing or proposed health facilities or services, of the type proposed, in the area to be served; or
(2) Where the department in consultation with the HSA determines that there has been a substantial change in the need for facilities or services proposed, in the area to be served, as reflected in standards, criteria, and plans as defined in Rule 10-5.11 herein; or
(3) At any time, three years after the original decision of the department.
[5] See Blank, "Certificate of Need: A Practioner's View of the Florida Health Facilities and Health Services Planning Act," The Florida Bar Journal (Mar. 1984), p. 157, and Konrad, "State Certificate of Need Program," The Florida Bar Journal (Mar. 1984), p. 160. See also Federal Property Management Corp. v. Health Care and Retirement Corporation of America, 462 So.2d 493 (Fla. 1st DCA 1985).