SHAW, Judge.
General Development Utilities, Inc. (GDU) appeals from an order of the Department of Environmental Regulation (DER) entered May 19, 1981, denying GDU’s petition for a hearing pursuant to chapter 120.57, Florida Statutes (1981). GDU seeks to challenge the Department’s waste load allocation letter imposing a zero allocation for oxygen-demanding materials on its Port Malabar sewage treatment plant effective upon expiration of its current operation permit which expires in December of 1982.
GDU currently operates a sewage treatment plant at Port Malabar, Florida, which discharges treated oxygen-demanding effluents into Turkey Creek. DER, pursuant to section 403.061, Florida Statutes (1981), has the power and duty to control pollution of air and water in accordance with the laws and regulations adopted and promulgated by it. In furtherance of its regulatory activity, on April 10, 1981, DER notified GDU of its zero waste load allocation and advised GDU to review its options for meeting the limits prior to expiration of its operating permits. In its petition for a formal hearing pursuant to chapter 120, Florida Statutes (1981), GDU asserts that the method used to determine the allocation is arbitrary and capricious and that, as a result of the allocation, it will be forced to find alternative means for disposing of its treated effluents. GDU sought to present data to show that DER’s method of determining the allocation is unreasonable and that a waste load allocation for oxygen-demanding effluents can be established that will not negatively impact upon the waters of the state. DER considered the petition without a hearing and entered its order denying a 120.57 hearing on the grounds that the letter was informational in nature and applicable to GDU only prospectively in relation to an application for a permit not now pending before the Department and that the letter has no legal or practical effect apart from prospective licensing.
The Department’s characterization of its letter as the most preliminary type of communication which the Department could address to GDU cannot minimize the import and finality of the correspondence which reads in part:
Pursuant to the latest waste load allocation water quality studies, the effluent limits defined for your facility are attached and hereby transmitted to you.
You should review your options for compliance with the enclosed and have a schedule proposed for meeting these effluent limits prior to expiration of your operating permits.
If you have any questions about the effluent limits, please contact Mr. Randy Armstrong in our Tallahassee office.
The Department’s order dismissing GDU’s petition finds that:
Inasmuch as the Department communication sought to be reviewed .. . has no legal or practical effect apart from a prospective license proceeding, such communication does not affect petitioner’s substantial interests. Petitioner’s right to submit additional or contrary information addressing those matters set forth in the Department’s letter of April 10, 1981 remains altogether unabridged. Petitioner may likewise petition for an administrative hearing regarding any agency action proposed on a subsequent permit application.
We disagree with the Department’s conclusion that the communication has no legal or practical effect apart from a prospective license proceeding. The letter does two things. It notifies GDU that the Department has conducted water quality studies and adopted the results of those studies. It puts GDU on notice that it has been assigned a zero waste load allocation as a result of the studies and that unless it submits a schedule for meeting these effluent limits prior to the expiration of its current *1070 operating permits, it stands in jeopardy of not having its permits renewed. GDU is put in the position of either immediately challenging the allocation or finding optional methods for treating its effluent. The Department has taken a position, reduced it to writing, and disseminated it to the affected party who must now submit a proposed schedule for compliance, or hazard nonrenewal of its permits. Clearly this is a final agency decision affecting the substantial interests of GDU. The fact that the petitioners can submit additional or contrary information on the disputed issues of material fact in hopes that DER will reconsider its position is not a substitute for a 120.57 hearing upon request. McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977). Having determined that the letter is a final agency decision determining the substantial interests of GDU, we are drawn to the conclusion that the Department’s order dismissing its petition was error. We reject the notion that GDU has no redress until such time as it applies for new permits and has its application rejected. The essential ingredients of a 120.57 hearing are present, i.e., final agency action affecting the petitioner’s substantial interests coupled with a disputed issue of material fact. If section 120.57 is to be “the Act’s wider point of entry for those with varied or general complaints concerning agency action: those against whom the agency has instituted adjudicatory proceedings, those whose impending injury is not wholly and precisely traceable to a rule invalidly exercising delegated legislative authority, those whose substantial interests are threatened by several agency causes or simply by agency action which is proceeding arbitrarily, imperiously, or obliviously,” then GDU has presented a compelling case. State ex rel. Department of General Services v. Willis, 344 So.2d 580, 591 (Fla. 1st DCA 1977).
We pointed out in Capeletti Brothers, Inc. v. State Department of Transportation, 362 So.2d 346, 348 (Fla. 1st DCA 1978) that “an agency must grant affected parties a clear point of entry, within a specified time after some recognizable event in investigatory or other free-form proceedings, to formal or informal proceedings under section 120.57.” Now we find it necessary to add a postscript: simply providing a point of entry is not enough if the point of entry is so remote from the agency action as to be ineffectual as a vehicle for affording a party whose substantial interests are or will be affected by agency action a prompt opportunity to challenge disputed issues of material fact in a 120.57 hearing. The opportunity afforded GDU in this instance does not meet this standard.
REVERSED and REMANDED for a 120.57 hearing.
McCORD and ERVIN, JJ., concur.