492 So.2d 379 (1985)
NME HOSPITALS, INC., D/B/a Delray Community Hospital and Nme Hospitals, Inc., D/B/a West Boca Raton Medical Center, Appellants,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES and Humana of Florida, Inc., D/B/a Women's Hospital of Boca Raton, Appellees.
BETHESDA MEMORIAL HOSPITAL, Boca Raton Community Hospital and St. Mary's Hospital, Appellants,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, and Humana of Florida, Inc., D/B/a Women's Hospital of Boca Raton, Appellees.
Nos. BC-311, BC-323.
District Court of Appeal of Florida, First District.
Opinion August 20, 1985.
Opinion on Motion for Rehearing June 24, 1986.
Rehearing Denied July 23, 1986.
C. Gary Williams & Michael Glazer of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for appellants in No. BC-311.
Kenneth F. Hoffman & Martha J. Edenfield of Oertel & Hoffman, Tallahassee, for appellants in No. BC-323.
Jay Adams, Deputy Gen. Counsel, Dept. of Health and Rehabilitative Services, Tallahassee, for appellees in No. BC-311.
John H. French, Jr. & James C. Hauser of Messer, Rhodes & Vickers, Tallahassee, for appellees in No. BC-323.
ERVIN, Judge.
Appellants in these consolidated cases appeal from a final order of the Department of Health and Rehabilitative Services (HRS), denying their petitions for section 120.57(1) hearings. We affirm.
*380 In November 1982, appellee Humana applied to HRS for a certificate of need (CON) to build a 120-bed women's hospital in Palm Beach County. In the January 21, 1983 issue of the Florida Administrative Weekly, HRS published notice that Humana's application was complete and informed affected persons of their right to timely request a hearing on the application. Fla. Admin. Code Rule 10-5.10. HRS denied Humana's application and published notice of the denial in the March 11, 1983 issue of the Florida Administrative Weekly.[1] Humana next sought a section 120.57(1) hearing to challenge the denial. HRS did not give notice to any affected persons of Humana's request for a hearing or of the fact that a hearing was scheduled or held. On June 20-23, 1983, a final administrative hearing was held regarding the denial of Humana's application. A joint pre-hearing stipulation had identified only one disputed issue: need. No hospital or other person petitioned to intervene before the June 1983 hearing.
After the hearing, but before the hearing officer issued a recommended order, HRS and Humana entered into a stipulation and agreement whereby HRS agreed to issue Humana a CON to construct a 120-bed women's hospital in Palm Beach County. The stipulation and agreement, entered pursuant to Section 120.57(3), Florida Statutes, states that the "extensive factual record" from the June 1983 hearing "in part, provides the predicate for this Stipulation", and continues that "[n]o person or entity which may be substantially affected by the approval of the proposed facility sought to intervene in the proceeding prior to hearing despite the clear point of entry afforded by Section 381.494(8)(e), Florida Statutes, and Rule 10-5.10(8)". The stipulation and agreement also states:
DHRS agrees that the Final Order resulting from this Stipulation constitutes final agency action which is not subject to review pursuant to Section 120.57, Florida Statutes. DHRS finds that the clear point of entry for persons whose interests may be affected by the issuance or denial of Humana's application occurred prior to the administrative hearing in this cause per Section 381.494(8)(c), Florida Statutes, and Rule 10-5.10(7), Florida Administrative Code.
Based on the stipulation and agreement and a joint motion requesting remand of the case to HRS for appropriate action, the hearing officer closed his file and returned the case to HRS. On August 16, 1984, HRS entered a final order adopting the stipulation and agreement and approving the issuance of the CON to Humana. Later on that same day, the appellants in case number BC-323 now before this court filed a "Petition for Formal Administrative Hearing" concerning the approval of Humana's CON. On the next day, August 17, 1984, the appellants in case number BC-311 filed a similar petition. All of the appellants are existing hospitals in Palm Beach County.
The final order on appeal before us, dismissing the petitions filed by both groups of appellants, states that the issue is whether the August 16, 1984 order is preliminary free-form agency action subject to administrative review, or final agency action subject only to judicial review. The order concludes that (1) appellants, as proper but not necessary or indispensable parties, had a point of entry into the administrative process by way of intervention prior to the final hearing; (2) the stipulation and final order did not precede or take the place of a formal administrative, evidentiary hearing, but rather were the result of that hearing; and (3) the final order constitutes *381 final agency action, and is not subject to further administrative review.
There is no dispute that appellants, as hospitals in the same HRS service district as Humana's planned facility, are substantially affected by the decision to grant a CON to Humana. See Fla. Admin. Code Rule 10-5.02(20). Contrast, Community Psychiatric Centers, Inc. v. Department of Health and Rehabilitative Services, 474 So.2d 870 (Fla. 1st DCA 1985) (applicant who filed application for CON could not seek comparative review of its application with that of applicant who had filed for CON four batching cycles earlier, because later applicant could not be considered substantially affected within meaning of the rule). Substantially affected persons have a right to seek relief under the Administrative Procedure Act from a HRS decision granting or denying a CON. The only question before us is whether appellants timely exercised such right and, if not, then whether that right may be considered to have been waived. Before one may properly exercise a right, such person must be afforded notice, or a point of entry into the administrative proceeding. See § 381.494(8)(e), Fla. Stat. (Supp. 1982);[2] Fla. Admin. Code Rule 10-5.10(8).[3] We must first decide whether HRS provided appellants with the required "clear point of entry, within a specified time period after some recognizable event in investigatory or other free-form proceedings, to formal or informal proceedings under Section 120.57." Capeletti Brothers, Inc. v. State, Department of Transportation, 362 So.2d 346, 348 (Fla. 1st DCA 1978). HRS argues that appellants had a clear point of entry upon notice of the initial denial of Humana's CON application and before the June 1983 administrative hearing. HRS concludes that because appellants neither petitioned for a 120.57(1) hearing, nor sought to intervene, pursuant to Rule 28-5.207, in the formal administrative review requested by Humana, appellants have waived their right to administrative review.
We agree with HRS for two basic reasons: First, no statute or administrative rule, during the applicable time frame here involved, required HRS to publish notice of a party's request for an administrative hearing concerning a CON decision.[4] Second, *382 as a practical matter, we do not consider the notice of preliminary denial "so remote from the agency action as to be ineffectual as a vehicle for affording" appellants "a prompt opportunity to challenge disputed issues of material fact in a 120.57 hearing." General Development Utilities, Inc. v. Florida Department of Environment Regulation, 417 So.2d 1068, 1070 (Fla. 1st DCA 1982). The published notice of the initial denial of Humana's application informed all substantially affected persons, including appellants, that the aggrieved applicant had the right to request an administrative hearing within 30 days of publication of the notice. See Fla. Admin. Code Rule 10-5.10(8). Contrast Henry v. State, Department of Administration, Division of Retirement, 431 So.2d 677 (Fla. 1st DCA 1983) (no clear point of entry afforded affected person of his right to request hearing, resulting from agency's denial of benefits, because notice of denial did not inform such person of the time limitation in which to seek review). A diligent, substantially affected person should have inquired, after the 30-day period had expired, regarding whether Humana had filed such a request; and, if Humana had, then any person who would be substantially affected by later administrative action on the request could then have sought timely intervention in the ongoing proceeding. Indeed, such action has been taken in other cases by persons who would be adversely affected by any later decision to grant a CON to an applicant that had requested a hearing following an initial denial of its application. In fact, the record discloses that in other cases some of the instant appellants had previously filed timely petitions to intervene in opposition to requested CON applications, wherein HRS had initially denied said applications and the applicants had then sought 120.57 hearings.[5] Under these circumstances, we conclude that appellants did not avail themselves of their "point of entry" into the administrative proceedings, i.e., via a Rule 28-5.207 motion to intervene, requiring that "[p]ersons other than the original parties to a pending proceeding who have a substantial interest in the proceeding," must file a petition to intervene at least five days before the final hearing.
We next decide whether appellants' failure to utilize the point of entry afforded them constitutes a waiver of their right to a 120.57 hearing. As stated above, the only agency action of which appellants received notice was the preliminary denial of Humana's application, a decision not contested by appellants. In Doheny v. Grove Isle, Ltd., 442 So.2d 966, 976 (Fla. 1st DCA 1983), this court observed that under similar circumstances, a party "could not be expected to have filed a request for a Chapter 120 hearing". In Doheny, however, the party did not waive his section 120.57 rights since he had timely intervened pursuant to Rule 28-5.207 before the final hearing. Id. at 977. In the case at bar, appellants' failure to intervene in Humana's requested review reflects a waiver of their 120.57 rights.
Since appellants must be considered to have waived their rights, even if the stipulation and agreement entered into by HRS was merely free-form action, we agree that action is not subject to the 120.57 review process. Capeletti Brothers, 362 So.2d at 348-49. Though the hearing officer never entered a recommended order, there is no authority requiring the entry of such order for final agency action. Section 120.57(3) authorizes "informal disposition ... of any proceeding by stipulation, agreed settlement, or consent order." Under the circumstances in which the agency itself is a party to the stipulation entered into, and there are at that time no parties contesting the application, section 120.57 cannot be considered as authority for requiring the entry of a hearing officer's recommended order to be reviewed by the same agency that has previously consented to the terms of the agreement.
Additionally, we distinguish Florida Convalescent Centers, Inc. v. Department of Health and Rehabilitative Services, 445 So.2d 631 (Fla. 1st DCA 1984), from the *383 case at bar. In Florida Convalescent, two CON applications in the same batching cycle were denied. After both applicants had requested formal proceedings on their respective applications under section 120.57(1), appellant sought to intervene in the formal proceeding that had been requested by the other applicant. Thereafter, the second applicant entered into a stipulation with HRS, stating that if the second applicant would agree to abandon its request for a 120.57 hearing, HRS in turn would grant its request for a CON. Appellant then filed a petition for hearing under section 120.57(1), asking that the CON not be granted until HRS first conducted a comprehensive review of all competing applications. This court found that the stipulation in question was "the equivalent of the free-form action involved in Capeletti", and concluded that appellant "has not waived the benefits of Section 120.57 but has properly requested them." 445 So.2d at 633. Florida Convalescent is distinguishable from the case at bar on the following grounds: (1) The parties were competing applicants in the same batching cycle; and (2) the appellant in Florida Convalescent timely intervened in the formal proceeding requested by the other applicant. Finally, the presence of CON applicants competing for a fixed pool of beds in Gulf Court Nursing Center v. Department of Health and Rehabilitative Services, 483 So.2d 700 (Fla. 1st DCA 1985), a comparative review case, distinguishes the facts there from those in the case at bar. In Gulf Court, notice of the initial denial of the appellees' CON applications could not have afforded the appellant a clear "point of entry", because such notice pertained only to a pool of units, that had been fixed prior to the time of appellant's application. Moreover, there was nothing in the initial denial that could conceivably have placed appellant on notice that the parties would agree that the earlier applicants would be granted CONs involving the later fixed pool to which appellant's application pertained.
AFFIRMED.
SHIVERS and JOANOS, JJ., concur.

ON MOTION FOR REHEARING
ERVIN, Judge.
Appellants in these consolidated appeals have filed motions for rehearings from our prior opinion entered August 20, 1985, which affirmed HRS's orders denying them hearings on their petitions contesting the granting of a certificate of need (CON) to Humana to construct a 100-bed addition to its Women's Hospital of Boca Raton, located in Palm Beach County. Our prior opinion was based upon the view that the appellants had waived a clear point of entry into the administrative process. We now consider that appellants in both cases have established a valid basis for rehearing, and therefore vacate our prior opinion of August 20, 1985, reverse HRS's order of denial, and direct that appellants in BC-311 be granted the right of comparative review with the application filed by Humana, and that the BC-323 appellants be accorded the right to a hearing as intervenors contesting Humana's application.
In reaching our decision, a chronological summary of the facts is required. In November 1982, Humana filed a CON application to construct a 120-bed addition to its hospital in Palm Beach County. As of the date of the application, or effective July 1, 1982, Chapter 82-182, section 3, Laws of Florida, had been enacted, specifically authorizing local health councils to "[d]evelop a district plan, using uniform methodology as set forth by the department, which will permit each local health council to develop goals and criteria based on its unique local health needs... ." Section 381.494(7)(b), Fla. Stat. (Supp. 1982). Moreover, section 381.493(3)(h), creating the local health councils that replaced the former health systems agencies, also went into effect on July 1, 1982. See Ch. 82-182, §§ 2 and 31, Laws of Fla. Pursuant to the amendments to sections 381.493 and 381.494, Florida Administrative Code Rule 10-5.11(23) was adopted, effective June 10, 1983, establishing a mathematical formula for evaluating the need for new acute care beds in the *384 departmental service districts. The methodology draws upon "statistical data from various sources, including projected population figures, to calculate a projected numerical bed need five years into the future (the `five-year planning horizon')." University Medical Center, Inc. v. Department of Health and Rehabilitative Services, 483 So.2d 712, 716 (Fla. 1st DCA 1986) (on rehearing).
During HRS's review of Humana's application, Humana, on January 12, 1983, filed a revised application with HRS, which based its request for the additional beds upon the 1988 planning horizon. In March 1983, HRS preliminarily denied the application, referencing its denial to the 1982-1987 health systems plan for the Palm Beach County area of the-then legally non-existent health systems agency, stating that a need did not exist for any additional beds in the particular service area, because an excess number of acute care beds existed through 1987. Humana, contesting the denial, thereupon petitioned for a section 120.57(1) hearing, which commenced on June 22, 1983, following the effective date of Rule 10-5.11(23). No affected person intervened at the hearing. Although no local health plan had been established by the time of the hearing, HRS, relying on the methodology contained in Rule 10-5.11(23), projected a net-bed need of 340 additional beds in the applicable district  District IX  for the 1988 planning horizon.
In July 1983, before the entry of a recommended order by the hearing officer, another hospital, not a party to the appeal, petitioned to intervene in opposition to the Humana application. The petition was denied, and the hospital sought appellate review. During the pendency of the appeal, a stay was imposed upon any further administrative action, which was lifted in August 1984, with the intervening hospital's voluntary dismissal of its appeal. Thereupon, Humana and HRS entered into a stipulation, agreeing that the Humana application would be approved, and, shortly after the entry of a final order incorporating the settlement agreement granting Humana its CON, the appellants at bar sought a hearing on their contest of HRS's action.
In our opinion of August 20, 1985, we stated that the published notice in the Administrative Law Weekly, dated March 11, 1983, advising all substantially affected persons of their right to request a hearing as to HRS's decision to deny Humana's application for a CON, was sufficient warning to any affected person that Humana might apply for a hearing, because we felt that if any such person had diligently inquired after the requisite 30-day period, such person would have ascertained that Humana had in fact applied for a hearing, and therefore could have timely intervened into Humana's requested hearing no later than five days before the commencement of the hearing, as required by Rule 28-5.207. We now regard that our former opinion did not take into proper account the changes to the CON review procedure brought about by the amendments to Chapter 82-182, and we therefore recede from it.
If any such affected persons had taken the cautionary measure of inquiring further, at a time no later than five days before the scheduled hearing, they would have uncovered the following facts: That the revised application filed in January 1983 applied to a 1988 planning horizon, but the specific reason given for the denial by HRS in its letter of March 10, 1983 was because, based upon the 1982-87 health systems plan which was inapplicable to the 1988 planning year, there existed an excess number of acute beds in the Palm Beach County area through 1987. An examination of the revised application, moreover, would have revealed, despite the 1988 target date, that the application was not complete in that it did not contain, as required by section 381.494(4)(a), a statement of the proposed project's "purpose and need in relationship to the applicable health systems plan" (e.s.), for the simple reason that no such plan had as yet been devised, nor could it have been devised until the adoption of Rule 10-5.11(23) on June 10, 1983, 12 days before the date of the scheduled hearing. The necessity for the application's *385 identification of the pertinent health systems plan is one that may not be waived in that the department, in reviewing CON applications, is required to determine "[t]he need for the health care facilities ... being proposed in relation to the applicable district plan ... adopted pursuant to Title XV of the Public Health Service Act, ... ." Section 381.494(6)(c)1.
Moreover, at the time of the hearing, there was no local health systems plan in effect for District IX,[1] although HRS was able to project an additional bed-need for the district from the criteria delineated in Rule 10-5.11(23). The application, never resubmitted since its filing in January 1983, was thus incomplete. Could another health care facility, faced with an incomplete application which targeted to a 1988 planning horizon, and aware that the reason given for HRS's preliminary denial was that, based upon an obsolescent health systems plan, no bed-need existed in the health service area for a prior planning year, have reasonably been afforded sufficient notice that HRS would eventually award a CON to the applicant from a pool of beds applicable to the 1988 planning year, without requiring the applicant to resubmit its application? We think not.
We agree that notice was provided, but it was hardly sufficient notice of HRS's possible future action. As we observed in General Development Utilities, Inc. v. Florida Department of Environmental Regulation, 417 So.2d 1068, 1070 (Fla. 1st DCA 1982):
[S]imply providing a point of entry is not enough if the point of entry is so remote from the agency action as to be ineffectual as a vehicle for affording a party whose substantial interests are or will be affected by agency action a prompt opportunity to challenge disputed issues of material fact in a 120.57 hearing.
Additionally, because waiver is not a concept favored in the law, it is necessary that
[a]n agency seeking to establish waiver based on the passage of time following action claimed as final must show that the party affected by such action has received notice sufficient to commence the running of the time period within which review must be sought.

Henry v. State, Department of Administration, 431 So.2d 677, 680 (Fla. 1st DCA 1983) (emphasis supplied).
The March 1983 notice and the papers on file at the time of the scheduled hearing were, under the circumstances, simply insufficient to caution affected persons that if they did not act within a certain specified date, a CON might be awarded to the applicant for the particular planning year from which the beds were eventually drawn. Confronted with such an application, one would reasonably presume, consistent with statutory authority and the agency's own rules, that the agency would require resubmittal of the application before it placed the application in the review cycle  yet Humana's January 1983 application was never completed nor resubmitted prior to the June 1983 hearing.
The case at bar is somewhat distinguishable from Gulf Court Nursing Center v. Department of Health and Rehabilitative Services, 483 So.2d 700 (Fla. 1st DCA 1985), because in Gulf Court the applicants awarded CONs never updated their applications to comply with the projected bed-need identified in the health systems plan for the particular planning year horizon from which the beds were awarded. Nevertheless, it is similar to Gulf Court in that in both cases the applications as submitted were incomplete because the applicants failed to state how the proposed projects were consistent with the applicable health systems plans directed to the target years involved. Because the incomplete applications in both cases were never resubmitted following their denial, as provided by Rule 10-5.14, they should not have *386 been submitted for review. As we stated in Gulf Court:
We conclude that a CON application for ... beds is required to address a specific bed need projected in the applicable district and state health plans. If the number of beds covered by the application is not within the number identified in the plan, a decision to grant the application could not be consistent with the requirement in section 300m-6(a)(5)(B)(ii), Title 42, U.S. Code, that each decision be consistent with the state health plan.

483 So.2d at 706-07 (emphasis supplied).
We recognized in Gulf Court that an application may be considered complete and submitted for review only if it identifies "the plan and fixed pool of bed need on which it is based," and once "the application has been accepted as complete, it cannot thereafter be supplemented by additional information or amendment except in the special circumstances described in rule 10-5.08(7) ... before initial review and denial." Id. at 707. Finally, Gulf Court points out the necessity for HRS's "strict adherence to ... [its] procedural rules governing the supplementation or amendment of completed applications before review and after denial ... [in order that] all applicants desiring to compete for the same fixed pool of beds, [may be afforded] a clear point of entry into the system, without giving any applicant an undue advantage over a competing application." Id. at 708 (emphasis supplied).
This case  similar to the factual scenario present in Gulf Court  demonstrates an egregious failure by HRS to comply with its own rules. Rule 10-5.08(5), consistent with the provisions of Section 381.494(5), Florida Statutes, explicitly precludes review of an application by the department unless it is complete, and delays review if it is not deemed complete by the completeness date specified in the application schedule, thereby placing the application in the next review cycle, once it is determined to be complete. Indeed, an application is considered by the department to be withdrawn if certain information requested to make the application complete is not furnished to the department within a specified time. Rule 10-5.08(6).
In the case at bar, the specific information necessary to establish bed-need and thereby make the application complete could not, as stated, have been made available until the date Rule 10-5.11(23) was adopted, or June 10, 1983. The department's projection of bed-need pursuant to the methodology contained in the rule at the time of the hearing was not in compliance with section 381.494(4)(a)'s requirement that the application contain a detailed statement showing the need and the purpose of the proposed project consistently with the applicable health systems plan in effect for the particular target year. Despite the failure of the application to contain such statement, it was never resubmitted, as required by Rule 10-5.14, following the adoption of the criteria to be used in determining bed-need for the target year involved. Under the circumstances, the public notice furnished was neither so clear nor substantial that affected persons could reasonably be considered to have been advised that if they neglected to take certain action to protect their rights within a specified period of time, such inactivity would be deemed a waiver of their right to contest any future agency action.
The failure of HRS to require that only completed applications be subjected to the review process is, however, only one example of the agency's disregard of its own rules. The record before us does not disclose whether either the application or the preliminary papers thereto were ever served on the local health council. Both Section 381.494(5), Florida Statutes (Supp. 1982), and Rule 10-5.08(1)(b), adopted pursuant thereto, require that at least 30 days before the filing of an application, a letter of intent shall be given by the applicant to the local health council and the department regarding the development of the proposal submitted for review. Later, at the time the application is filed with the department, the applicant is required by section 381.494(5) to send also a copy of the application *387 to the local health council. Rule 10.508(1)(b), adopted pursuant to the amendments contained in Chapter 82-182, and effective July 29, 1982, specifically states that the "failure [of an applicant] to file a timely letter of intent and to have it actually received by the Department and by the local health council at least 30 days prior to the filing of an application will prevent the Department from accepting an application." (emphasis supplied)
Clearly, service on the local health council is not a requirement that can be cavalierly disregarded by the department. The demand that an applicant file a letter of intent with HRS and the local health council affords health care facilities in the same district with notice that they too may, if they desire, file a letter of intent within the specified period of time as a competing applicant. See Rule 10-5.08(1)(b) and (e). The submission of the application to the local health council, together with the types of notice provided for in Rule 10-5.08(4), also supplies the opportunity to affected persons in the same service area, once an application is deemed complete, to request a public hearing while the application is being reviewed by the department. See Rules 10-5.08(4) and 10-5.10. The public hearing may, moreover, be conducted by the local health council. Section 381.494(7).
Thus, throughout the entire CON review process in the case at bar, we see a continuing failure by the department to demand compliance by the applicant with its own rules. We understand that there may have been some uncertainty resulting from the legislatively-mandated conversion from the health systems agencies to the local health councils, as well as from the statutory requirement that the councils devise district plans consistent with the methodology to be developed by the department, yet many of the problems at bar could have been avoided if HRS had, in conformity with its rules, simply refused to submit the incomplete application for review, and required the applicant to resubmit the application by supplying additional specific information, previously omitted. The agency's disregard of the CON review procedure requires us to remand the case for further agency action because the fairness of the proceedings conducted has been impaired by its failure to follow prescribed procedure. Section 120.68(8).
We are not unaware that in Turro v. Department of Health and Rehabilitative Services, 458 So.2d 345, 346 (Fla. 1st DCA 1984), the administrative hearing on competing applications for new hospitals took place just before the effective date of Rule 10-5.11(23), establishing the methodology for determining acute care bed-need, and that we there held that the department correctly applied the methodology in determining a lack of bed-need, because the "rule prescribes an evidentiary standard and is therefore procedural in nature." Turro  unlike the present case  did not involve an issue of whether the notice supplied following the submission of incomplete applications was sufficient to place affected persons on notice of their right to a hearing following the preliminary denial of the applicants' requests for CONs. That case is therefore inapplicable to a question such as that now on review.
Additionally, our opinion should not be understood as stating that once an application is deemed complete and the applicant has otherwise sufficiently complied with the CON review procedure, other affected persons in the same service area may not be considered to have waived their clear point of entry into the administrative proceeding. Compare Florida Medical Center v. Department of Health and Rehabilitative Services, 484 So.2d 1292, 1295 (Fla. 1st DCA 1986) (a hospital's application for a hearing contesting the award of a CON to another hospital, properly filed in compliance with the 1981 health systems plan, was correctly denied, in that the contestant had failed to avail itself of a clear point of entry following the preliminary denial of the application by intervening at any time before five days of the applicant's scheduled hearing, as required by Rule 18-5.207). Our opinion at bar simply states that no clear point of entry can be furnished to affected persons if the applicant does not follow the procedure prescribed for filing applications seeking additional health care facilities.
*388 We are aware of Humana's arguments that appellant/NME's applications should not be batched with theirs because the applications, if any,[2] were filed in a later batching cycle than Humana's, and the petition for hearing did not specifically request comparative review, nor was it made an issue on appeal. Humana urges that the relief requested by NME was only to be allowed status as an intervenor on its requested hearing as to HRS's decision to grant a CON to Humana. We agree that the relief requested by NME was not one asking specifically for comparative review, nevertheless, NME's petition for a hearing sought, among other things, the denial of the CON to Humana, due to the failure of Humana's application "to establish the applicable criteria relating to the need for such services."
Whether NME specifically requested comparative review with the application filed by Humana is immaterial to the issue of whether the applications of the competing hospitals should be placed in the same batching cycle with that of Humana. Humana's incomplete application, as stated, should never have been accepted for review. A literal reading of the agency's rules would require Humana to revise its application and then resubmit it for review; thereby forcing its placement in the first cycle of review after its completion, which would presumably place Humana's application in a much later review cycle than NME's. Because, however, the parties did not have the benefit of our Gulf Court opinion at the time of the entry of the final order on review, as well as the attendant uncertainty alluded to resulting from the conversion to the new district plan, we conclude, similar to the Gulf Court panel, that Humana should be given a reasonable opportunity to resubmit a completed application consistent with the criteria prescribed by Rule 10-5.11(23), and be afforded comparative review with the applications of NME. In so holding, we do not in any way denigrate the batching cycle review process, nor do we recede from what we previously stated in University Medical Center, Inc. v. Department of Health and Rehabilitative Services, 483 So.2d at 715-716, recognizing that "[i]f an applicant fails to file in a particular batching cycle it thereby waives the right to comparative review with those health care providers that do file an application in that batching cycle." We simply say today that Humana's incomplete application should never have been placed in a review cycle. The orderly review of completed applications in the cycles in which they have been appropriately placed, of course, remains unaffected by our opinion.
Since the record does not reflect that appellants in case number BC-323 had filed applications for CONs at the time of their petition for hearing, they shall be accorded only the right to a hearing as intervenors.
Reversed and remanded for further proceedings.
SHIVERS and JOANOS, JJ., concur.
NOTES
[1] The notice stated:

On February 25, 1983, Certificate of Need No. 2442 was denied Humana-Women's Hospital for a 100-bed women's specialty hospital in South Palm Beach, Palm Beach County.
* * * * * *
Persons whose substantial interests are affected by the above decisions may request an administrative hearing within 30 days of publication of this notice pursuant to procedural rules contained in Chapter 10-2, F.A.C.
10 Florida Administrative Weekly 584 (March 11, 1983).
[2] Section 381.494(8)(e), Florida Statutes (Supp. 1982), provides:

An applicant or a substantially affected person who is aggrieved by the issuance, revocation, or denial of a certificate of need shall have the right, within not more than 30 days from the day of notice of the issuance, revocation, or denial of such certificate by the department, to seek relief according to the provisions of the Administrative Procedure Act and to seek judicial review of decisions resulting from hearings under the Administrative Procedure Act. In such judicial review, the court must affirm the decision of the department unless the decision is found to be arbitrary, capricious, or not in compliance with this act.
[3] Rule 10-5.10(8) states:

An applicant aggrieved by a department decision to deny a Certificate of Need for a project in total or for an identifiable portion of the total project; an HSA aggrieved by a department decision contrary to HSA recommendations relative to issuance or denial of a Certificate of Need; or persons whose interests are substantially affected by a department decision to issue or deny a Certificate of Need shall have the right of appeal and to demand a fair hearing under the provisions of the Administrative Procedure Act (Chapter 120, Florida Statutes). Any such appeals must be in writing and be received by the department within 30 days of the date the applicant, substantially affected person and HSA receive written notice of the department action. Publication of Notice of the issuance or denial of a Certificate of Need in the Florida Administrative Weekly shall constitute receipt of written notice.
[4] Our research indicates that starting with the April 13, 1984 issue of the Florida Administrative Weekly, HRS now gives published notice of requests for administrative hearings on CON decisions. The following statements precede the notices:

Resolution of these requests for hearing will determine substantial interests of the parties and may determine the substantial interests of non-parties. Those whose substantial interests will or may be determined by these proceedings are advised to govern themselves accordingly.
The point of entry thus established by the revised procedure now clearly places all substantially affected persons on notice that a hearing has been requested, and that they may ignore the request only at their own peril.
[5] Those motions to intervene were filed before HRS began the practice discussed in footnote 4.
[1] Humana and HRS's pretrial stipulation identified two criteria at issue, one of which was the need for health care services in District IX.
[2] Humana states that the record does not contain NME's applications. While this is true, NME's petition for hearing referenced to its later filed applications for CONs in the same district as Humana's earlier filed application.