PEARSON, TILLMAN (Ret.), Associate Judge.
The appellant, Methodist Regional Hospital System, Inc. d/b/a Methodist Manor Nursing Home (Methodist Manor) was an applicant for a certificate of need (CON) to build a nursing home in Duval County. The appeal is from an order of the Department of Health and Rehabilitative Services (HRS) denying Methodist Manor a comparative review of its application with those of the appellees who were granted CONs based on a “fixed pool”[1] of nursing home beds created after both their applications and that of Methodist Manor were filed. The basis for the denial of Methodist Man- or’s request for a hearing was that its application was in a later “Batching Cycle” [2] than those of the appellees.
The appellees who were granted CONs are Health Quest Management Corporation (Health Quest), Beverly Enterprises (Beverly), and Florida Convalescent Centers (Florida Convalescent). Although other arguments have been advanced and considered, the basic issue on appeal is whether the holding of this court in Gulf Court Nursing Center v. Department of Health and Rehabilitative Services, 483 So.2d 700 (Fla. 1st DCA 1985), is applicable to the present case so as to require a comparative hearing of the several applications here considered.
The operative facts begin with the filing of the applications for CONs by the corporate appellees. On July 15, 1983, Florida Convalescent, Health Quest, and Beverly filed their applications with HRS seeking CON authority to construct nursing home facilities or to add beds to existing facilities in Duval County. On January 15, 1984, and thus in a different batching cycle, Methodist also applied for authority to construct a nursing home in Duval County. All of these applications were denied by HRS because no nursing home beds were deemed to be needed in Duval County under the need methodology then used by HRS. On December 3, 1984, a change in the method of determining need came about by the implementation of a new formula under Rule 10-5.11(21), Fla.Admin. Code. This change created a substantial increase in the number of beds available for allocation in Duval County.
Reaching back into the batching cycle for July 15, 1983, HRS, without further hearings, granted by stipulation CONs to the appellees. Even though the appellees’ applications had been denied, they were pending on requests for hearing. On March 7, 1985, Methodist petitioned HRS for a formal hearing requesting comparative review *274 with the applications of the appellees. Florida Convalescent, Beverly and Health Quest moved to dismiss Methodist’s petition on the grounds that as a later batch applicant Methodist lacked standing for a comparative review. HRS dismissed the petition. It is from this order that this appeal is taken.
In Gulf Court Nursing Center v. Dept, of Health and Rehabilitative Services, supra, this court held that the batching cycle concept could not be used to defeat the right to comparative review where the applicant, although in a later batching cycle, had addressed in its petition a newly created need and the beds under the newly created need were allocated without hearing to earlier cycle applicants, who had not addressed that need in their petitions. The newly created need was identified as a “fixed pool.” Biomedical Applications of Ocala, Inc. v. Office of Community Medical Facilities, 374 So.2d 88 (Fla. 1st DCA 1979). The “fixed pool” in Gulf Court was created by a change in the health system plan covering Lee County.
The batching cycle concept has been held to be applicable not only to initial HRS review but throughout the administrative hearings. University Medical Center, Inc. v. Dept, of Health and Rehabilitative Services, et al., 483 So.2d 712 (Fla. 1st DCA 1985). This concept ought not be abridged unless the consideration of the Health Facilities and Health Services Planning Act, Section 381.493 et seq., Florida Statutes (1983), and related federal acts require a comparative review. See discussion of Ashbacker Radio Corp. v. F.C.C., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945), in Gulf Court.
This brings us to a comparison of the factual sequence in Gulf Court with the sequence in the present case:
GULF COURT METHODIST MANOR
1. Appellees first applied for a CON and were assigned a batch cycle prior to that of Gulf Court. 1. Appellees first applied for a CON and were assigned a batch cycle prior to Methodist Manor.
2. Appellees’ CON re- 2. Methodist Manor quests denied. applies for CON based
on same need as appel-lees.
3. Change in “Health Plan” by HRS creates a new need for beds. 3. All appellees’ CON requests denied.
4. Gulf Court applies for a CON based on the new health plan. 4. Methodist Manor’s CON request denied.
5. Appellees granted CONs based on the new health plan not addressed in their applications. 5. Change in rule methodology by HRS creates a new need for beds.
6. .Gulf Court’s request for CON denied. 6. Appellees granted CONs based on new need methodology not addressed in their applications.
7. Gulf Court sought comparative review. 7. Methodist Manor seeks comparative review.
The distinctions argued are:
(1) Methodist Manor seeks review due to a rule change, while Gulf Court sought review because of a change in a health plan.
(2) Methodist Manor’s application did not address the new fixed pool, while Gulf Court’s application, which was filed after the new health plan, did address a new fixed pool. The first distinction does not go to any reason of fairness or the orderly processing of applications. The essential fact is that a new fixed pool was created while both the appellant’s and the appel-lees’ applications were pending for HRS action. The second distinction does not change the situation because both the appellant and the appellees applied under the same presumed need for beds. None of the applications that we now consider addressed or were updated to include the new fixed pool, but HRS acted upon them in chronological order as though they were addressed to the new pool. The practice of granting CONs on a first-come, first-served basis was condemned in Gulf Court.
Both the Biomedical and Gulf Court cases have applied the Ashbacker test for determining when a comparative hearing on CON applications is in order:
*275 We agree that a reviewing court, in considering whether a comparative hearing should have been afforded by an administrative agency, should recognize that there are always three competing interests involved: (1) the interest of the applicant in obtaining consideration of its proposal, recognized in the law requiring the agency to conduct a hearing before rejecting a proposal; (2) the interest of the agency [and the public] in establishing orderly procedures that permit agency decisions to be made in a timely and efficient manner; and (3) the interest of the public in assuring that the agency makes the best choice when several alternatives are available.
We have considered each of those tests and in our opinion they dictate, as in Gulf Court, that a comparative hearing should be required under the circumstances of this case. See, NME Hospitals v. Department of Health and Rehabilitative Services, 490 So.2d 1300 (Fla. 1st DCA 1986). We are urged that perhaps the interests of the agency for an orderly disposition of applications may be hurt by breaching the batch cycle rule. While we recognize this possibility, it has not been shown to be more than a possibility. We conclude that the same argument was available in Gulf Court and upon consideration was not found to be governing.
The consideration of the interest of the public in a fair and competitive consideration of all the applications for CONs that are before the department at the time of the implementation of a new fixed pool is the determinative factor. The public and the nursing home industry are benefited by an award of CONs to the most cost efficient alternative before the department at the time that a new fixed pool is established.
We have considered the several points presented by each of the appellees and although not discussed here, we have determined that they do not preclude the result we have reached.
Accordingly, we reverse the order dismissing the petition of Methodist Manor for a comparative review of its application together with the applications of Health Quest, Beverly, and Florida Convalescent. We remand the causes to the department with directions that each applicant be given an opportunity to update their application in accordance with Rule 10-5.14, Florida Administrative Code.
Reversed and remanded.
BOOTH, C.J., and SMITH, J„ concur.

. As defined in Biomedical Applications of Clearwater, Inc. v. Dept. of Health and Rehabilitative Services, 370 So.2d 19 (Fla. 2d DCA 1979).

. Section 381.494(5), Florida Statutes (1983).