ZEHMER, Judge.
In these consolidated appeals, Beverly Enterprises-Florida, Inc., and Inverness Convalescent Center seek review of an order of the Department of Health and Rehabilitative Services (HRS or the Department) which denied both Beverly and Inverness certificates of need (CONs) to build nursing homes. We reverse the denial of Beverly’s CON and affirm the denial of the CON to Inverness.
HRS is required to determine and publish the need for new community nursing home beds on a three-year planning horizon. Fla.Admin.Code Rule lO-JJ-ll^lJib).[1] HRS currently does this twice a year, in December for the January batching cycle, and in June for the July batching cycle. These projections are published in the “Semi-Annual Nursing Home Census and Bed Need Report.” The semiannual report includes a cover sheet which contains the following language:
“Net beds” provides the number of beds for which certificate of need approval is indicated at the time of publication. This report reflects the best information at the time it was created. Changes in reporting may alter the occupancy rate in a given locale. Also, pending litigation or appeals yet to be initiated may change the count of approved beds. Thus, net beds for CON approval are subject to upward and downward shifts.
HRS published one of these semiannual reports on December 1, 1984. The report indicated that 615 additional beds would be needed in District III by 1988. These additional beds resulted from the application of an amendment to the existing-need calculation, rule.
In January 1985 Inverness, Beverly, Southern Medical Associates (SMA), and several other health care providers filed applications for CONs to construct nursing homes in District III. Beverly proposed to build a 60-bed addition to its nursing home in Suwannee County; Inverness proposed to build a 120-bed nursing home in Citrus County; SMA proposed to build a 60-bed nursing home in Putnam County. Beverly, Inverness, SMA, and the others were all placed in the January 1985 batching cycle.
HRS eventually granted CONs for 102 beds to four of the applicants in the January 1985 batching cycle. All other applicants in District III received letters denying their applications based on HRS’s determination that no additional need existed. The remainder of the 615 needed beds had *1013 either been awarded to prior applicants who were in the process of pursuing administrative challenges to the denial of their CONs or had been eliminated by changes in population, occupancy rates, and other factors in the need methodology. The applications from Inverness, Beverly, and SMA were all denied. Inverness, Beverly, and SMA filed petitions for administrative hearings on the denials of their CONs. The Department of Administrative Hearings (DOAH) consolidated the petitions from Beverly, Inverness, and SMA with each other and with an application by Eus-tis Limited Partnership (Eustis) to add three beds to an existing facility. Prior to the hearing on these consolidated cases, the parties entered into a stipulation that the only issues at hearing would be need and need-related issues.
During the hearing, Beverly presented evidence that residents of Suwannee County find it difficult to get access to existing nursing home beds. Suwannee County presently has only two nursing home facilities. The Smith nursing home is part of the Advent Christian Village and selects its residents primarily from the village. As a result, very few residents of the Smith nursing home are drawn from Suwannee County. Smith was shown to have an occupancy rate of about 99% and a waiting list of 52. The other nursing home operating in Suwannee County is the facility Beverly is seeking to expand. It was shown to have an occupancy rate of 99.75% and a waiting list of over 50. HRS has approved a 60-bed nursing home in Suwannee County which has yet to be built. Beverly presented evidence, however, that completion of this facility will not address all of the need for nursing home beds in Suwan-nee County.
Inverness presented evidence that the age, bed rate, and economic situation of Citrus County residents demonstrates a need for an additional 120 nursing home beds. There are currently 430 beds in Citrus, with occupancy rates of about 89%. According to the evidence presented by In-verness, this rate is artificially low because it includes data from a newly opened facility and a restricted access facility. If the data were adjusted to account for this, the occupancy rate in existing nursing homes would be 92%. Inverness projected that by 1988 there will be only 19 beds per 1,000 residents of Citrus County. Citrus County was shown to have the most dense concentration of residents age 75 and older among the over 65 population of any District III county.
The hearing officer entered an order recommending that the application from Inverness be denied for lack of need, and that Beverly’s and SMA’s be granted. The hearing officer found that 500 nursing home beds had been allocated to prior-batched applicants, but made no ruling on whether this was consistent with the right of comparative review as discussed in Gulf Court Nursing Center v. Department of Health and Rehabilitative Services, 483 So.2d 700 (Fla. 1st DCA 1985). The hearing officer also included an appendix which either accepted or rejected each of the parties’ various proposed findings of fact. The hearing officer accepted Beverly’s proposed finding that the already-approved, 60-bed nursing home in Suwannee County would not meet the established need for nursing home beds in Suwannee and would not eliminate the access problem being experienced by residents there.
HRS accepted the hearing officer’s findings of fact in their entirety, but rejected his recommendation that Beverly be granted a CON. The final order stated, as reason for the rejection:
In reaching his conclusion that Beverly’s CON application number 3746 to add 60 beds to its facility in Suwannee County should be approved, the Hearing Officer disregarded HRS uncontroverted evidence that there are 60 beds presently approved in Suwannee County ... [T]he 60 approved beds not considered by the Hearing Officer will significantly increase the inventory of beds in Suwannee County, and should abate the access problem.
The final order also did not reach any conclusion on whether the grant of 500 beds to prior-batched applicants was consistent with Gulf Court.
*1014 Beverly and Inverness both argue that the Department’s award of beds from the January 1985 batching cycle to prior-batched applicants has violated the principles enunciated and applied in Gulf Court. They argue that the 615 additional bed figure published in the semiannual report constituted a “fixed pool” and that, under Gulf Court, HRS was required to comparatively review all of the applicants for that pool. Thus, they argue, HRS could not award those beds to prior-batched applicants without first requiring them to update their applications to address the 1988 planning horizon.
The Department argues that the figures published in the semiannual report did not create a “fixed pool.” They note that the additional need arose because of an amendment to the rule governing calculation of bed-need, and argue that had the amended rule been applied in prior years much of the additional need would have existed and been awarded to applicants in those years. HRS also argues that appellants failed to elicit sufficient proof at the hearing to show a Gulf Court violation.
This case requires us to decide how the “fixed pool” concept discussed in Gulf Court should be applied to a need for new beds which results from a change in the method of calculating bed need rather than from normal growth changes in the district. Obviously calculation under the amended rule, had it been used in prior years, might have shown an increased bed need for the planning horizon for those years. The fixed-pool concept for comparative review requires that HRS either allocate those additional beds between the pri- or years and the present batching cycle or treat all of the additional need as arising in the current planning horizon. HRS has now elected by rule to apply the latter approach:
Publication of Fixed Need Pools. The department shall publish in the Florida Administrative Weekly at least 15 days prior to the letter of intent deadline for a particular batching cycle the fixed need pools for the applicable planning horizon specified for each service in applicable departmental rules contained in 10-5.011, F.A.C. These batching cycle specific fixed need pools shall not be changed or adjusted in the future regardless of any future changes in need methodologies, population estimates, bed inventories, or other factors which would lead to different projections of need, if retroactively applied.
Fla.Admin.Code Rule 10-5.008(6)(b).
At the time the present case arose, however, HRS did not follow either of these approaches. Instead, the Department merely calculated present need under the amended methodology in rule 10-5.-ll(21)(b), published those figures, and then awarded some of the beds to prior-batched applicants and some to applicants in the current batching cycle. According to testimony presented at the hearing, HRS never determined how many beds belonged to prior batching cycles and how many arose in the planning horizon at the time of the amendment, nor did HRS indicate to potential applicants the number of beds to be awarded to prior-batched applicants and the number to current applicants. Thus, it is not accurate to say that HRS used a fixed-pool concept whereby all applicants for a particular pool of beds were comparatively reviewed. In this sense, the procedures applied by HRS to appellants may well have violated the comparative-review principles enunciated in Gulf Court.
We conclude, however, that appellants have pursued the wrong remedy for this potential error. Neither Inverness nor Beverly challenges the grant of a CON to a specific prior-batched applicant. Instead, they argue that HRS should be required to grant them CONs for beds exceeding the bed-need calculated under the rale methodology on the premise that the need which existed at the time of their application was wrongfully satisfied through CONs awarded applicants in prior batching cycles in violation of Gulf Court. This argument, however, overlooks that both Gulf Court and NME Hospitals, Inc. v. Department of Health and Rehabilitative Services, 492 So.2d 379 (Fla. 1st DCA 1985), involved direct challenges by one CON applicant to *1015 the award of a CON to a competing applicant in violation of the challenger’s right of comparative review. Appellants should have raised the possible Gulf Court violations by direct challenge in each proceeding in which they felt CONs were improperly awarded to other applicants. The proper remedy for violation of one’s right to comparative review is to seek enforcement of that right in the competing applicant’s proceeding — not to seek the award of a CON for even more beds after the unchallenged award has become final. Even where no clear point of entry has been provided, the proper remedy, as in NME Hospitals, is to challenge the prior CON belatedly.
Beverly also challenges the denial of its CON on the ground that the Department’s final order improperly ignored the hearing officer’s findings of fact on the issue of the prior-approved but uncon-structed 60 bed facility and the effect those beds would have on the need for additional beds in Suwannee County. We agree that this argument has merit. Although the hearing officer did not directly refer to the approved 60-bed facility in his recommended order, he did specifically accept Beverly’s proposed findings of fact relating to this facility. These findings of fact concluded that the approved 60-bed facility would not abate the access problem in Su-wannee County. Thus, the Department’s statement that the hearing officer had “disregarded” this evidence is not supported by the record.
Moreover, even if the hearing officer had disregarded evidence, HRS was not authorized to remedy this omission by making its own findings on the evidence:
When the entity charged with finding facts upon the evidence presented, the hearing officer, has, for whatever reason, failed to perform this function, the appropriate remedy is not for the agency (or the court of appeal) to reach its own conclusion, but rather to remand for the officer to do so.
Cohn v. Department of Professional Regulation, 477 So.2d 1039 (Fla. 3d DCA 1985). In Cohn the court went on to state, “[T]here is no authority for any agency to make an independent determination of disputed fact in a review proceeding like this under any circumstances.” Id. at 1047. In stating that the approved 60-bed facility would abate the access problem, HRS improperly made its own findings of fact on the evidence rather than limiting itself to a review of the evidence to find support for the hearing officer’s findings. Nevertheless, HRS seeks to uphold its order by arguing that the hearing officer’s findings did not meet the standard of proof set forth in Florida Administrative Code Rule 10-5.011(21). Again, if the hearing officer’s findings were not specific enough to satisfy the agency, HRS should have remanded the case to the hearing officer for additional findings.
We reverse the Department’s denial of Beverly’s CON with directions that the Department either enter an order approving the hearing officer’s recommendation to grant Beverly’s application for CON, or remand to the hearing officer for appropriate findings of fact regarding the need for Beverly’s CON in light of the 60 beds in the approved facility.
Inverness likewise argues that the evidence it presented justified a finding of need for its facility. The hearing officer found, however, that the evidence presented by Inverness did not justify a finding of need. Since this finding is supported by competent, substantial evidence, the Department’s denial of this CON must be affirmed.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
JOANOS and WIGGINTON, JJ., concur.

. Now Fla.Admin.Code Rule 10-5.011(k)(2).