ZEHMER, Judge.
We have for review consolidated appeals from an order of the Department of Health and Rehabilitative Services which denied appellants’ Certificate of Need applications for 120-bed nursing home facilities in Orange County, Florida. Appellants, Beverly Enterprises, Forum Group, Inc., and Hillha-ven Convalescent Center, contend that the order denying their CON applications violates the principles enunciated in Gulf Court Nursing Center v. Department of Health and Rehabilitative Services, 483 So.2d 700 (Fla. 1st DCA 1985), because *219 nursing home beds in the fixed pool for which the appellants had timely applied were improperly awarded to prior-batched applicants. Finding no error in the appealed order, we affirm.
On December 1, 1984, HRS published its Semi-Annual Nursing Homes Census Report and Bed Need Allocation identifying a need for 321 nursing home beds in Orange County, Florida, for the January 1988 planning horizon. This computation was based upon a mathematical formula contained in Rule 10-5.11(21) [now 10-5.011(l)(k) ], Florida Administrative Code, as amended, which was effective on December 27, 1984. In mid-December 1984, each of the appellants timely filed letters of intent, stating their intent to file CON applications to be reviewed in the January 1985 batching cycle. The applications were completed and comparatively reviewed in the January 1985 batching cycle for the January 1988 planning horizon.
Following the issuance of the December 1, 1984 Semi-Annual Census Report, but prior to HRS’ initial decision on appellants’ applications, HRS agreed to issue certificates of need for a total of 290 nursing home beds in Orange County to four other applicants, West Orange Manor, Park Lake Health Care Center, Florida Convalescent Centers, and Health Quest Realty, who had submitted applications in the July 1984 batch. These prior batched CON applications had been initially denied by HRS based on insufficient bed need in the July 1987 planning horizon. The revised methodology in Rule 10-5.11(21) as amended resulted in a new finding of need during the pendency of administrative appeals in which these applicants challenged the denial of their respective CON applications by HRS.
HRS reduced the 321 bed need identified in the December 1, 1984 Census Report by the 290 beds awarded to the prior batched applicants. On or about June 30, 1985, HRS issued letters to appellants denying their respective CON applications because there was now insufficient bed need in the district.
Appellants filed a timely request for a formal administrative hearing pursuant to § 120.57(1), Florida Statutes, to contest HRS’ denial of their CON applications. After determining that no factual dispute existed, the parties agreed to have their cases proceed to an informal hearing pursuant to § 120.57(2). The issue was whether appellants were entitled to be awarded CONs pursuant to their respective applications because the December 1, 1984 Census Report allegedly created a fixed pool of 321 needed beds available to the January 1985 batching cycle applicants and HRS had improperly granted CONs from this pool of beds to earlier batched applicants without requiring comparative review with appellants’ applications. The hearing officer found that the December 1, 1984 Census Report did not create a “fixed pool” of 321 beds needed in Orange County solely for the 1988 planning horizon, and concluded that this case did not parallel the situation in Gulf Court. As a result, the hearing officer recommended that appellants’ applications for CONs be denied.
On February 12, 1987, HRS entered its final order denying appellants’ applications for CONS and adopted the findings and conclusions of law made by the hearing officer. HRS also ruled that appellants were afforded a “clear point of entry” to challenge the issuance of the CONs to prior batched applications, which they now allege were granted from the fixed pool addressed by them, but that in lieu of utilizing that point of entry, appellants sought to collaterally attack the award of those CONs in an unrelated action. HRS concluded that there is no basis in law for permitting such a collateral attack.
Appellants contend before us that the award of beds from the January 1985 batching cycle to prior-batched applicants has clearly violated the principles enunciated and applied in Gulf Court. They argue that the 321 bed need figure published in the December 1984 Semi-Annual Report constituted a “fixed pool” for the January 1985 batching cycle exclusively, and that under Gulf Court HRS was required to comparatively review all of the applicants for that fixed pool. Thus, they argue, HRS *220 could not award the 290 beds to prior-batched applicants without first requiring them to update their applications to address the 1988 planning horizon and then comparatively reviewing these updated applications with appellants’ applications. Because HRS did not do this, appellants argue, it cannot lawfully reduce the 321 bed need figure by awarding CON’s to such prior applicants.
HRS answers that its order should be affirmed because appellants have failed to establish that the beds awarded to earlier batched applicants came from a “fixed pool” addressed by appellants’ applications. HRS states that the December 1984 report was not intended to create a fixed projection of need based upon a rule-defined need determination, but rather, that the report represents an informational tool based upon the most recent data existing at the time of its creation. HRS points to the cover sheet of the December 1984 SemiAnnual Report, which explains that the conclusions stated therein were clearly not “fixed” and were based upon information that was subject to change. HRS also contends that appellants were clearly on notice that the results of litigation involving pending earlier batched applications would necessarily be considered in the final analysis of appellants’ applications, and thus, the publication in February and March, 1985, of the issuance of CONs to earlier applicants provided appellants with a clear point of entry to challenge the propriety of those awards.
We conclude that this case is controlled by our decision in Inverness Convalescent Center v. Department of Health and Rehabilitative Services, 512 So.2d 1011 (Fla. 1st DCA 1987). In Inverness, the parties also argued that HRS had violated Gulf Court principles by not conducting a comparative review of all the applicants for the “fixed pool” of beds. HRS on the other hand argued that the semi-annual report did not create a “fixed pool”, and that a Gulf Court violation had not been shown. We stated:
This case requires us to decide how the “fixed pool” concept discussed in Gulf Court should be applied to a need for new beds which results from a change in the method of calculating bed need rather than from normal growth changes in the district. Obviously calculation under the amended rule, had it been used in prior years, might have shown an increased bed need for the planning horizon for those years. The fixed-pool concept for comparative review requires that HRS either allocate those additional beds between the prior years and the present batching cycle or treat all of the additional need as arising in the current planning horizon. HRS has now elected by rule to apply the latter approach:
Publication of Fixed Need Pools. The department shall publish in the Florida Administrative Weekly at least 15 days prior to the letter of intent deadline for a particular batching cycle the fixed need pools for the applicable planning horizon specified for each service in applicable departmental rules contained in 10-5.011, F.A.C. These batching cycle specific fixed need pools shall not be changed or adjusted in the future regardless of any future changes in need methodologies, population estimates, bed inventories, or other factors which would lead to different projections of need, if retroactively applied.
Fla.Admin.Code Rule 10-5.008(6)(b).
At the time the present case arose, however, HRS did not follow either of these approaches. Instead, the Department merely calculated present need under the amended methodology in rule 10-5.11(21)(b), published those figures, and then awarded some of the beds to prior-batched applicants and some to applicants in the current batching cycle. According to testimony presented at the hearing, HRS never determined how many beds belonged to prior batching cycles and how many arose in the planning horizon at the time of the amendment, nor did HRS indicate to potential applicants the number of beds to be awarded to prior-batched applicants and the number to current applicants. Thus, it is not accurate to say that HRS used a fixed-pool concept whereby all applicants *221 for a particular pool of beds were comparatively reviewed. In this sense, the procedures applied by HRS to appellants may well have violated the comparative-review principles enunciated in Gulf Court.
We conclude, however, that appellants have pursued the wrong remedy for this potential error. Neither Inverness nor Beverly challenges the grant of a CON to a specific prior-batched applicant. Instead, they argue that HRS should be required to grant them CONs for beds exceeding the bed-need calculated under the rule methodology on the premise that the need which existed at the time of their application was wrongfully satisfied through CONs awarded applicants in prior batching cycles in violation of Gulf Court. This argument, however, overlooks that both Gulf Court and NME Hospitals, Inc. v. Department of Health and Rehabilitative Services, 492 So.2d 379 (Fla. 1st DCA 1985), involved direct challenges by one CON applicant to the award of a CON to a competing applicant in violation of the challenger’s right of comparative review. Appellants should have raised the possible Gulf Court violations by direct challenge in each proceeding in which they felt CONs were improperly awarded to other applicants. The proper remedy for violation of one’s right to comparative review is to seek enforcement of that right in the competing applicant’s proceeding — not to seek the award of a CON for even more beds after the unchallenged award has become final. Even where no clear point of entry has been provided, the proper remedy, as in NME Hospitals, is to challenge the prior CON belatedly.
512 So.2d at 1014-15.
In the case now before us, as in Inverness, none of the appellants have challenged the grant of the CONs to a specific prior-batched applicant; they are seemingly content to let those recipients proceed to construct and operate facilities under those CONs. Instead, they argue that HRS must continue to treat the full 321 bed need as available to the January 1985 batching cycle applicants and award CONs to those applicants who properly applied for them, namely, appellants. In effect, they are asking that we direct HRS to create, or recognize, a need for an additional 290 beds covered by the CONs already awarded as a penalty for not awarding them comparative review. We are not disposed to do so even though the handling of those previously awarded CONs may not have complied with the comparative review principles we announced in Gulf Court.
Appellants should have raised the possible Gulf Court violations by “direct challenge in each proceeding in which they felt CONs were improperly awarded to other applicants.” Inverness, 512 So.2d at 1015. They should have pursued their remedies in a proceeding that could have effectively provided comparative review with the prior applicants. Pursuing an independent action such as this in which the only meaningful remedy is to create additional bed need where none exists under the applicable rule methodology serves no useful purpose in the proper administration of the statutory scheme.
Appellants argue that they never had a right to intervene in a timely manner in the prior batched CON proceedings and cite our decision in Methodist Regional Hospital System, Inc. v. Department of Health and Rehabilitative Services, 497 So.2d 272 (Fla. 1st DCA 1986), which was not discussed in Inverness, in support of their position. We find that case is readily distinguishable, however. In Methodist Hospital the later-filed applicant sought comparative review with the earlier applicants when their applications, though originally denied, were later granted because the amended rule 10-5.11(21) methodology resulted in recognition of a need for additional beds. The court granted relief to the later applicants because they had properly challenged the right to comparative review in the proceedings involving the earlier batched applications. Had appellants in this case likewise sought relief, even though belatedly, in the proceedings involving the earlier batched applicants, appellants would have fallen within the holding in the Methodist Hospital case. The Meth *222 odist Hospital decision does not conflict with our decision in this case.
AFFIRMED.
SHIVERS and THOMPSON, JJ., concur.